In re HESSCO INDUSTRIES, INC., Debtor.

Weneta Kosmala, Chapter 7 Trustee, and Weinstein, Eisen, and Weiss, Appellants,

v.

Hans Imhof, individually; Hans Imhof, as Trustee of the Imhof Family Trust; and Steve Hess, Appellees.

BAP No. CC–01–1559–BMoP.
Bankruptcy No. SA 93–24006–JB.
Adversary No. SA 95–02459–JB.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Dec. 2, 2002.

Deborah H. Eisen, Weinstein, Eisen, Weiss & Rothschild, LLP, Los Angeles, CA, for Weneta A. Kosmala, Ch. 7 Trustee.

Michael R. Pfeifer, Pfeifer & Reynolds, Santa Ana, CA, for Hans Imhof; Inhof Family Trust.

Before: BRANDT, MONTALI, and PERRIS, Bankruptcy Judges.

## ORDER RE PARTIES

BRANDT, Bankruptcy Judge.

This matter arises out of the bankruptcy court's judgment for defendants after trial on the chapter 7 trustee's adversary complaint to avoid and recover preferential and fraudulent transfers. The bankruptcy court had entered an order before trial awarding fees as a discovery sanction to appellees under FRCP 37,[1] applicable via Rule 7037.

---

1. Absent contrary indication, all chapter and     section references are to the Bankruptcy

Although sanctioned in the order, Weinstein, Eisen, Weiss (WEW),[2] the trustee's counsel, did not name itself as an appellant in the notice of appeal it prepared for the trustee. Appellees argued for dismissal in their opening brief because the trustee lacked standing to appeal the order's provisions assessing fees against her counsel. The trustee and WEW then moved to allow WEW to substitute itself under FRAP 43(b) as real party in interest with respect to the fee award.

We here consider the motion, concurrently filing an unpublished memorandum decision on the merits of the appeal.[3] Recharacterizing the motion, we GRANT it.

## I.

Beginning in 1975, debtor Hessco Industries, Inc. manufactured fiberglass tubs and showers for sale to builders, developers, and contractors, at its plant in La Habra, California. In 1984, Hessco purchased 15 acres of real property and a 66,000–square–foot manufacturing facility in Eloy, Arizona. Although owned by Hessco, the Eloy plant was utilized by a wholly-owned subsidiary. Steve Hess was the controlling shareholder and president or CEO of Hessco, and the subsidiary.

In the late 1980's Hessco began experiencing financial difficulties. In mid–1989 Hessco arranged for a loan of $1,002,000 to be secured by its real property, but the lender ultimately refused to fund, and in November Hessco ceased all manufacturing at the Eloy plant and put the property on the market. Hessco had employed nearly 200 people at the Eloy plant; after manufacturing ceased, only four or five remained for service and warehousing tasks. Neither Hessco nor its subsidiary again used the Eloy plant for manufacturing.

In April 1991 Hessco entered into a sale and leaseback with the Imhof Family Trust. The trustees and income beneficiaries of the Trust are appellee Hans Imhof and his wife. As a condition of its purchase of the Eloy plant, the Trust required Hessco to lease the property back from the Trust under a seven-year triple net lease, at an initial rent of $9000 per month. Hess personally guaranteed the lease. Hans Imhof executed the lease in his individual capacity; the Trust was not named as a party. Shortly after the transaction, Imhof was elected to Hessco's board of directors. From the time it entered into the lease until it filed its bankruptcy petition, Hessco paid a total of $384,439.30 to the Trust in accordance with its obligations under the lease.[4]

Hessco filed a chapter 11 petition in 1993. The case was converted to chapter 7 in 1995, and Weneta Kosmala was appointed trustee. She filed a timely complaint against Imhof individually and as trustee of the Trust, and against Hess, seeking to avoid payments made under the lease as preferential transfers under § 547, fraudulent transfers under §§ 544 (and Cal. Civ.Code § 3439) and 548, and unauthorized post-petition transfers under

---

Code, 11 U.S.C. §§ 101–1330. All "Rule" references are to the Federal Rules of Bankruptcy Procedure, "FRCP" references are to the Federal Rules of Civil Procedure, and "FRAP" references, to the Federal Rules of Appellate Procedure.

2. Now Weinstein, Eisen, Weiss & Rothschild LLP.

3. We affirm the judgment in favor of appellees on the fraudulent transfer cause of action and reverse on the preference cause of action.

4. Although some payments were made to Hans Imhof individually, the bankruptcy court found that all funds were deposited into the Trust's bank account. Memorandum Decision, page 3.

§ 549, and recovery of those payments under § 550. The trustee dropped the § 549 claim in her amended complaint.

During the proceedings, the trustee moved to compel answers or preclude the testimony of Hess and Imhof, for a protective order against Imhof's counsel, and for sanctions against defendants and their counsel. The bankruptcy court denied the motion and, by order entered 15 July 1998, ordered the trustee's counsel to pay attorney's fees of $1000 under Rule 7037, and to deduct $15,000 from any hourly fees sought from the debtor's estate.

After 16 days of trial from February to June 2001, the bankruptcy court entered judgment on 6 November for appellees on all causes of action, setting forth its reasoning in a written memorandum. The trustee timely appealed.

Hess did not appear in this appeal.

## II.

The bankruptcy court had jurisdiction via 28 U.S.C. § 1334 and § 157(b)(1), (b)(2)(A), (F), (H), and (O), and we do under 28 U.S.C. § 158(c).

## III.

■ The trustee argues that she has standing to appeal the fee award against her counsel because she appealed that part of the order denying her request for attorney's fees of $15,000. That she has standing to appeal denial of relief she sought does not give her standing respecting the sanctions awarded only against her counsel. To the extent the order provided for reduction of fees which otherwise might be awarded trustee's counsel, the trustee was not "directly and adversely affected pecuniarily" by the bankruptcy court's order (nor does she so argue). She thus lacks standing to appeal the sanctions:

> To have standing to appeal a decision of the bankruptcy court, an appellant must show that it is a "person aggrieved" who was "directly and adversely affected pecuniarily by an order of the bankruptcy court. The order must diminish the appellant's property, increase its burdens, or detrimentally affect its rights."

*McClellan Federal Credit Union v. Parker (In re Parker)*, 139 F.3d 668, 670 (9th Cir.1998) (citations omitted).

## IV.

■ We apply the Federal Rules of Appellate Procedure to matters not expressly addressed by the Rules or our rules. 9 Cir. BAP Rule 8018(b)–1.

■ FRAP 43 provides for substitution of one party for another where the real party in interest has died (subsection (a)), where a public officer who is a party to an appeal in an official capacity dies, resigns, or otherwise ceases to hold office (subsection (c)), and also where "a party needs to be substituted for any reason other than death" (subsection (b)). The rule was designed for situations in which one party to the suit becomes incapable of continuing to litigate the suit, "such as where a party becomes incompetent or a transfer of interest in the company or property involved in the suit has occurred." *Alabama Power Co. v. I.C.C.*, 852 F.2d 1361, 1366 (D.C.Cir. 1988).

WEW argues that FRAP 43(b) permits substitution here because its failure to name itself as an appellant was an "inadvertent omission that carries unduly harsh consequences," and allowing the substitution will not prejudice appellee. Appellees argue that there is no legal basis for substitution, that granting the motion would be prejudicial because the record designated is insufficient for them to address fully the merits, and that further briefing and supplementation of the record would impose additional costs where fee arrangements have already been finalized.

Appellees also contend that the trustee's interests are adverse to WEW in that the relief sought would result in an additional $15,000 in attorney's fees being paid from the estate, but this argument is unavailing: that portion of the order is moot because trustee's counsel worked solely on a contingency basis. Consequently, reversal would not impact the estate.

At oral argument, counsel's representation that WEW and its current incarnation are the same firm as was sanctioned in the order on appeal was uncontradicted: it is a real party in interest.

But appellees are correct that FRAP 43(b) does not authorize the relief sought here: the death and public officer provisions do not apply, and we decline, absent at least persuasive authority, to read "any reason other than death" so broadly that it would comprehend simple failure to name a proper party.

## V.

█ Nevertheless, FRAP 3(c)(4) provides in relevant part, "[a]n appeal must not be dismissed for ... failure to name a party whose intent to appeal is otherwise clear from the notice." Under this rule, a court should not dismiss the appeal of a party whose intent to appeal is "objectively clear." Advisory Committee's note to 1993 amendment of FRAP 3(c).

In *Garcia v. Wash,* 20 F.3d 608, 609 (5th Cir.1994), the Fifth Circuit Court of Appeals rejected the argument that it lacked jurisdiction to entertain an appeal of FRCP 11 sanctions imposed on appellant's counsel because he was not formally named as an appellant in the notices of appeal. Although *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 318, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988) held that failure to name a party in a notice of appeal was a fatal jurisdictional defect, the *Garcia* court noted that FRAP 3(c) had been amended to add the language quoted

above. The intent of the amendment was to prevent the loss of a right to appeal for the inadvertent omission of a party's name. *Garcia,* 20 F.3d at 609. The Advisory Committee notes to the 1993 amendments to FRAP 3(c) so indicate, and specifically cite *Torres.* The Fifth Circuit found that counsel's intent to appeal in *Garcia* was evidenced by the appeal of the final judgment, in which sanctions had been imposed only against him individually, and reference in the notice of appeal to the district court's refusal to stay the execution of sanctions against him.

Two other circuit courts of appeal have declined to extend *Garcia* where the sanctions at issue were imposed jointly against both a party and counsel. *See Maerki v. Wilson,* 128 F.3d 1005, 1007–08 (6th Cir. 1997) and *Agee v. Paramount Communications, Inc.,* 114 F.3d 395, 399–400 (2d Cir.1997). Under those circumstances, the two courts of appeal concluded that it was not apparent on the face of the notice of appeal that it was the attorney appealing the sanctions, and thus dismissed for lack of jurisdiction:

> Because the sanctions [in *Garcia*] were imposed solely against the attorney, there was no confusion as to whether the client, the attorney, or both were appealing from the judgment. The same cannot be said in this case involving a joint and several sanction.

*Agee,* 114 F.3d at 399.

The *Agee* court noted these situations are frequently dealt with in unpublished dispositions, citing, among others, three from the Ninth Circuit, construing the 1993 version of FRAP 3(c) and allowing the forgetful attorneys' appeals. We have found no published Ninth Circuit authority addressing the impact of that rule on the facts presented here.

While there is no explicit reference to the fee award in the notice of this appeal, WEW evidenced its intent to appeal the

fee award by the trustee's appeal of the order, which imposed the requirement to pay fees only on counsel, and to which the order was attached. The trustee's statement of issues, Rule 8006, specified the sanctions award as an issue on appeal, and the trustee's opening brief addressed the issue; appellees chose not to respond. Nevertheless, we afforded them an opportunity to do so in their response to the substitution motion.

Appellees cannot seriously assert prejudice in our considering the merits of the sanction order, and as the sanctions were imposed only on WEW, the notice of appeal did not engender confusion.

## VI.

Accordingly, we will treat the motion for substitution as a motion to amend the caption of this appeal to include WEW as an appellant, and GRANT that motion.