[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-15092

_____

D.C. Docket No. 1:16-cv-22336-JEM

CHARLES SILBERMAN,

Plaintiff - Appellant,

versus

MIAMI DADE TRANSIT,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 17, 2019)

Before WILLIAM PRYOR and NEWSOM, Circuit Judges, and VRATIL,* District
Judge.

---

* Honorable Kathryn H. Vratil, United States District Judge for the District of Kansas, sitting by
designation.

NEWSOM, Circuit Judge:

Following several distressing encounters with Miami-Dade Transit bus drivers, Charles Silberman filed a *pro se* action against MDT under Title II of the Americans with Disabilities Act, 42 U.SC. § 12131 *et seq.*, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794. Still ably representing himself, Silberman now appeals the district court's order granting MDT's motion to dismiss. In short, the district court concluded (1) that MDT is not *sui juris*, which is just a fancy way of saying that it doesn't have the capacity to sue and be sued separately from Miami-Dade County, (2) that the Eleventh Amendment bars Silberman's Title II claim, and (3) that Silberman failed to state a claim for compensatory damages under § 504 because he hadn't alleged that any MDT "official" acted with the required "deliberate indifference."

The resolution of this case is complicated by a thorny threshold issue (or really, a series of related issues) that we have to address before jumping into the merits. Most prominently, we conclude—and all here seem to agree—that the lone named defendant, MDT, can't be sued under Florida law. Having reached the same conclusion, the district court offered to allow Silberman to amend his complaint to substitute the County in MDT's place, but he declined to do so. Now, though, before us, Silberman does want to substitute the County, and thus effectively to amend his complaint *nunc pro tunc*. It's a procedural mess.

2

We hold that because MDT was the wrong party from the get-go, we can't sub in the County on appeal; rather, such a correction could occur only in the district court. Ordinarily, we might be inclined to remand to allow Silberman one more shot, particularly given his *pro se* status. We conclude, however, that any further amendment of the complaint would be futile, as Silberman didn't—and for reasons we'll explain, can't—otherwise state a claim. Accordingly, we affirm the district court's dismissal.

## I

### A

Because this case arises at the motion-to-dismiss stage, we accept as true the facts as alleged in Silberman's complaint. *See Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016). Silberman suffers from "severe depression recurrent with psychotic episodes." To help cope with his illness, his psychiatrist prescribed him a service dog—named Oscar—who was trained to "prevent or interrupt [Silberman's] impulsive or destructive behaviors, such as suicide."

Silberman's claims stem from several instances in which he attempted to ride MDT buses while accompanied by Oscar. In one encounter, a bus driver "refused to continue on her route while [Silberman] remained on board," causing other passengers to "scream[]," "cuss[]," and "mock[]" him "because of [his] disability." Silberman promptly reported the incident to Marcos Ortega, MDT's

3

ADA officer, and asked him to do what he could "to see this discrimination practice ends." Ortega soon responded that MDT's Office of Civil Rights and Labor Relations had investigated and determined that the driver "clearly failed" to comply with the ADA and "MDT's own internal procedures and training." In concluding his email, Ortega reassured Silberman that the driver would face "appropriate disciplinary action and a comprehensive retraining on all ADA requirements."

Silberman later made two similar complaints to Ortega. In one, Silberman stated that he had "once again" faced discrimination at the hands of an MDT bus driver and asked Ortega to consult the bus's audio and video recordings to get a sense of what happened. Although Silberman's complaint was short on detail, Ortega again acknowledged that the driver had violated the ADA and promised disciplinary action and retraining. Finally, Silberman complained to Ortega that an MDT bus driver had "intentionally passed" him at a bus stop and that the driver had later acknowledged that he did so because of Oscar. Silberman chose to drop this complaint, however, because he couldn't obtain video and audio recordings to corroborate his allegations.

**B**

Silberman filed a two-count complaint in the Southern District of Florida alleging that he had experienced "indifferent or . . . bad faith intentional

4

discrimination" at the hands of MDT bus drivers "numerous times." In Count I, which alleged violations of Title II of the ADA, Silberman faulted MDT's "practices, policies and procedures," and sought compensatory damages, costs, and "any and all other relief that may be necessary and appropriate." Count II raised a nearly identical claim under § 504 of the Rehabilitation Act, coupled with the additional assertion that "MDT receives federal financial assistance" and is thus "a covered entity within the meaning of the RA."

Through the Miami-Dade County Attorney's office, MDT moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. MDT first argued that it is not *sui juris* and that Silberman's complaint "may be dismissed for this reason alone." Beyond that, MDT contended that, under Florida law, "sovereign immunity irrefutably applies" where, as in this case, "the complaint specifically allege[s] bad faith or willful conduct." Finally, MDT argued that Silberman didn't state a claim for compensatory damages because he didn't "connect the Department" as such—separately from the individual bus drivers—"to the alleged wrong."[1]

Adopting the magistrate judge's report and recommendation, the district court held that MDT is not *sui juris* and dismissed Silberman's complaint without

---

[1] MDT separately moved to dismiss Silberman's claims for equitable relief. The district court dismissed those claims, and they aren't relevant for purposes of this appeal.

prejudice.  Having done so, the court went on to dismiss Silberman's Title II claim with prejudice and his § 504 claim without prejudice.  As to the Title II claim, the court "based [its decision] on [MDT's] (and the County's) sovereign immunity." This seems to have been a reference to the magistrate judge's twin determinations (1) that "the Eleventh Amendment bars [Silberman's] ADA claim" because he sought only retrospective monetary relief and (2) that, with respect to the conduct at issue here, Congress hadn't validly abrogated the County's sovereign immunity.

The district court concluded that Silberman's § 504 claim survived the Eleventh Amendment, harking back to the magistrate judge's determination that "Congress ha[d] explicitly conditioned the acceptance of federal funding on a state's waiver of sovereign immunity" with respect to § 504 liability.  Even so, the magistrate judge concluded—and the district court agreed—that, as originally pleaded, Silberman's claim for compensatory damages under § 504 failed on the merits because he hadn't alleged "intentional discrimination or gross indifference" on the part of any MDT "officials" other than the line-level bus drivers.

The district court gave Silberman more than three weeks "to amend the Complaint to substitute the County as the proper Defendant" and "to include more specific allegations as to intentional or deliberate discrimination from a[n] MDT official to support [a claim for] compensatory damages."  Silberman did neither, but instead filed a motion for reconsideration.  Although Silberman devoted his

6

motion primarily to responding to the district court's sovereign-immunity analysis, two footnotes are important for our purposes. First, he expressly "agreed with MDT" that it is not *sui juris*. *See* Pl.'s Mot. Recons. at 2 n.2 (stating that "under Miami Dade County Code section 2-145, MDT does not have the capacity to sue or be sued"). Second, he acknowledged that the district court had given him leave to amend his complaint "to include more specific allegations as to intentional or deliberate discrimination from a[n] MDT 'official,'" but said that he "w[ould] not amend the Complaint" toward that end "because a[n] MDT 'official' did not intentionally or deliberate discriminate" against him. *Id.* n.3.

The amendment deadline thus came and went, and true to his word, Silberman didn't update his complaint to strengthen his factual allegations. Nor did he amend his complaint to name the County—either in place of or in addition to MDT—as a defendant. The district court thereafter denied Silberman's motion for reconsideration and ordered the case closed. This appeal followed.

## II

### A

We first address Silberman's decision to name MDT, rather than the County, as the sole defendant in this case. Under Federal Rule of Civil Procedure 17(b)(3), a party's "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located." Again, the district court held that MDT is not *sui juris*

under Florida law and, on that basis, dismissed Silberman's complaint without prejudice.

Silberman doesn't contend on appeal that the district court erred in doing so. To the contrary, he continues to acknowledge—as he did in his response to MDT's motion to dismiss—that MDT doesn't have the capacity to sue or be sued separately from the County.[2]  As already explained, Silberman declined the district court's invitation to substitute the County, but he now asks us, for the first time on appeal, to make the switch under Federal Rule of Appellate Procedure 43.

Substitution of parties under Rule 43 is often a routine matter—when, say, during the pendency of the appeal, a party to the district court proceeding dies or a

---

[2] District courts in our circuit have uniformly reached the same conclusion—as to both MDT and other Miami-Dade County departments—after examining their organic ordinances. *See Wellons v. Miami-Dade Cty.*, No. 13-20574-CIV, 2014 WL 2047779, at *9 n.6 (S.D. Fla. Feb. 25, 2014), *aff'd sub nom. Wellons v. Miami Dade Cty.*, 611 F. App'x 535 (11th Cir. 2015) (collecting cases). *See also Masson v. Miami-Dade Cty.*, 738 So. 2d 431, 432 (Fla. 3d Dist. Ct. App. 1999) (citing Miami-Dade Police Department's organic ordinance in concluding that it is not *sui juris*).  We tend to think that the issue might be a bit closer.  The way we read it, MDT's organic ordinance sends mixed signals about the agency's capacity.  On the one hand, § 2-148 gives the Miami-Dade County Attorney the power to "adjust, compromise, or settle all damage claims *against Miami-Dade County* arising out of the operation of [MDT]," which suggests that any claim involving MDT's conduct would properly run against the County.  On the other hand, § 2-145 seems to contemplate that MDT itself plays a key role in its own litigation, as it says that MDT "shall [i]nvestigate, adjust, compromise, settle or *defend all damage claims* arising from operation of the system in accordance with the procedures established by the County Manager pursuant to Section 2-148."  Adding to the intrigue, MDT has been a named defendant in two recent state-court decisions, seemingly without incident.  *See Melendez v. Miami-Dade Cty. Transit*, 217 So. 3d 1138 (Fla. 3d Dist. Ct. App. 2017); *McFarlane v. Miami-Dade Transit Auth.*, 215 So. 3d 658 (Fla. 1st Dist. Ct. App. 2017).  Happily, we needn't hazard an *Erie* guess about whether MDT is *sui juris* because Silberman doesn't challenge the district court's determination that it isn't.  Because, as explained below, a defect in a party's capacity doesn't affect our jurisdiction, we decline to address the issue.

new individual assumes the Office of Attorney General. Our authority to substitute parties in other situations, though, is more limited. We've explained that although Rule 43(b) "does allow substitution for reasons other than death, the rule is based on Fed. R. Civ. P. 25, which has been interpreted to apply *only when the case originally had the correct parties.*" *Glickstein v. Sun Bank/Miami, N.A.*, 922 F.2d 666, 672 n.10 (11th Cir. 1991) (emphasis added), *abrogated on other grounds by Saxton v. ACF Indus., Inc.*, 254 F.3d 959 (11th Cir. 2001). In *Glickstein*, for instance, we denied a motion to substitute a new party in place of an individual who "was not the personal representative [of an estate]"—and therefore not yet a proper party—"at the time the suit was brought." *Id.* at 671. In remanding, we explained that "[a] motion directed to the district court to amend the pleadings should be used when all of the proper parties are not present." *Id.* n.10.[3]

Because (for reasons already explained) MDT is not suable under Florida law, it couldn't have been the "correct party" at any point in this litigation.

---

[3] Other courts have similarly held that substitution under Rule 43(b) is appropriate only where some intervening event occurs after the district court's judgment that affects a party's ability to litigate. *See, e.g.*, *AngioDynamics, Inc. v. Biolitec, Inc.*, 775 F.3d 550, 554 (2d Cir. 2015) ("In sum, we hold that substitution under Rule 43(b) is permissible only when a party to the suit is unable to continue to litigate and not when an original party has voluntarily chosen to stop litigating." (internal quotations and citation omitted)). *See also In re Hessco Indus., Inc.*, 295 B.R. 367, 371 (B.A.P. 9th Cir. 2002) ("[W]e decline, absent at least persuasive authority, to read 'any reason other than death' so broadly that it would comprehend simple failure to name a proper party.").

*Glickstein*, therefore, compels us to reject Silberman's thirteenth-hour request to name the County in MDT's place.

**B**

Because we can't substitute the County for MDT on appeal, we're faced with a complaint that seeks to obtain a judgment against an entity that can't be sued.  Where does that leave us?

Confronted with a nearly identical *sui juris* problem in *Woldeab v. Dekalb County Board of Education*, we called this sort of error—naming a defendant that "is not a legal entity capable of being sued"—a "complaint[] deficiency" that  runs to a plaintiff's ability to state a claim.  885 F.3d 1289, 1290, 1292 (11th Cir. 2018).  There, as in *Glickstein*, we remanded because the deficiency was properly addressed in the district court.  In particular, we held that "[t]he district court should have advised [the *pro se* plaintiff] of his complaint's deficiency and given him the opportunity to amend to name the proper defendant."  *Id.* at 1292.[4]  The question, then: Is remand likewise appropriate here?

---

[4] We recognize that there is a division of authority with respect to whether a claim against a non-*sui juris* entity presents a true "case[]" or "controvers[y]" within the meaning of Article III. Some courts take the view that "[t]he question of a litigant's capacity or right to sue or be sued generally does not affect the subject matter jurisdiction of the district court." *Summers v. Interstate Tractor & Equipment Co.*, 466 F.2d 42, 50 (9th Cir. 1972); *see also Md. People's Counsel v. Fed. Energy Regulatory Comm'n*, 760 F.2d 318, 319 (D.C. Cir. 1985) (Scalia, J.) ("[T]he question of [a party's capacity to sue] under state law does not go to our jurisdiction."). Others recognize a distinction between garden-variety cases "of misnomer or lack of a legal capacity due to some legal disability" and cases in which the question is "whether the defendant sued is an existent person," and hold that "where a suit is brought against an entity which is

10

Our cases make clear that "a [*pro se*] plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice"—at least, that is, where "a more carefully drafted complaint might state a claim." *Id.* at 1291 (quoting *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 & n.1 (11th Cir. 2002) (en banc)). The problem for Silberman is that the district court *did* give him the opportunity to amend his complaint, which—willfully or otherwise—he squandered by refusing to do so in the (ample) time allotted. Of course, *Bank* (which *Woldeab* quoted) says that a plaintiff "must be given *at least* one chance to amend," seemingly leaving open the possibility that, in some situations, further leniency may be warranted in recognition of the difficulty in proceeding *pro se*. *Bank*, 928 F.2d at 1112 (emphasis added); *cf. also Woldeab*, 885 F.3d at 1291 (remanding because the plaintiff's response to the magistrate

---

legally [nonexistent], the proceeding is *void ab initio* and its invalidity can be called to the attention of the court at any stage of the proceeding." *Oliver v. Swiss Club Tell*, 35 Cal. Rptr. 324, 329 (Cal. Ct. App. 1963); *see also McCullar v. Estate of Campbell*, 672 S.E.2d 784, 784–85 (S.C. 2009); *A.E. v. M.C.*, 100 So.3d 587, 595 (Ala. Civ. App. 2012). Although the latter view has taken hold primarily in state courts and, as a result, is not ordinarily articulated in terms of the Article III case-or-controversy requirement, it's possible that at least in some circumstances, the absence of a defendant with legal personhood may preclude the existence of an "actual controversy" that is "fit for federal-court adjudication." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (citation and internal quotation marks omitted). But we needn't decide today whether to adopt that view because we're satisfied that an "actual controversy" exists in this appeal. Although the County is not formally a party, it has actively litigated this dispute on behalf of MDT, and, as already explained, any judgment against MDT would run against the County. That's enough, we think, to ensure that this case is "fit for federal-court adjudication." *Id.*

11

judge's report and recommendation "demonstrates his confusion as a *pro se* plaintiff unschooled in the intricacies of Title VII pleading") (internal quotations omitted).[5]

We needn't decide whether an extra dose of grace was called for here, because *Bank* goes on to clarify that amendment is *not* warranted (1) "where [the plaintiff] has indicated that he does not wish to amend his complaint," or (2) "if a more carefully drafted complaint could not state a claim." 928 F.2d at 1112. The latter exception—in the lingo, where further amendment would be "futile," *Woldeab*, 885 F.3d at 1291—is particularly relevant here. "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). The futility issue is concerned less with whether Silberman *has* otherwise stated a claim against the County than with whether, when all is said and done, he *can* do so. Because (as explained below) we conclude that he can't, we hold that the district court's dismissal should be affirmed.

---

[5] We should note that Silberman—despite proceeding *pro se*—appeared to grasp the nuanced implications of his failure to substitute the County as the proper defendant before the district court. In his response to MDT's motion to dismiss, Silberman asserted that his failure to name the County "should not be grounds [for] granting [MDT's] Motion to Dismiss with prejudice," and instead asked the court to dismiss without prejudice, or alternatively, to "add Miami-Dade County as a Defendant *sua sponte*." Pl.'s Resp. to Def.'s Mot. Dismiss at 5. Silberman got what he asked for, and yet declined to add the County to his complaint. The record doesn't reveal why.

## III

So, if Silberman had sued the right defendant, would he have stated a claim for compensatory damages under either Title II of the ADA or § 504 of the Rehabilitation Act?  For the following reasons, we hold that he wouldn't (and couldn't) have done so—and, therefore, that amendment would have been futile, and, therefore, that the district court's dismissal is due to be affirmed.

## A

We begin with some stage-setting.  Under Title II, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C § 12132. Section 504 is pretty much identical; it provides, as relevant here, that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  Given the textual similarities between the two statutes, "the same standards govern" claims under both, and we "rel[y] on cases construing [Title II and § 504] interchangeably." *T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cty., Fla.*, 610 F.3d 588, 604 (11th Cir. 2010) (*quoting Allmond v. Akal Sec., Inc.*, 558 F.3d 1312, 1316 n.3 (11th Cir.

13

2009)).  (We have also "held that it is appropriate to look to Title IX case law for guidance in examining discriminatory intent" under Title II and § 504.  *J.S., III by & through J.S. Jr. v. Hous. Cty. Bd. of Educ.*, 877 F.3d 979, 987 (11th Cir. 2017)).  In other words, whatever we have said—or say now—about Title II goes for § 504, and vice versa.

To state a claim under either Title II or § 504, a plaintiff must establish "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability."  *Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1083 (11th Cir. 2007).  In the ordinary course, proof of a Title II or § 504 violation entitles a plaintiff only to injunctive relief.  *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 831 (11th Cir. 2017).  To get damages—as Silberman seeks here—a plaintiff must clear an additional hurdle: he must prove that the entity that he has sued engaged in intentional discrimination, which requires a showing of "deliberate indifference."  *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir. 2012).

"Deliberate indifference," we have said, is an "exacting standard."

14

*J.S*, 877 F.3d at 987. It requires proof that "the defendant knew that harm to a federally protected right was substantially likely and . . . failed to act on that likelihood." *Liese*, 701 F.3d 344 (citation omitted). Moreover, in order to hold a government entity liable, the plaintiff must demonstrate that an "official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [entity's] behalf" had "actual knowledge of discrimination in the [entity's] programs and fail[ed] adequately to respond." *Id.* at 349 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). To qualify, that "official" must be "high enough up the chain-of-command that his [or her] acts constitute an official decision by the [entity] not to remedy the misconduct." *J.S.*, 877 F.3d at 987 (internal quotation marks omitted).[6]

---

[6] In an effort to escape *Liese*'s "official" requirement, Silberman has made two distinct but related—and late-breaking—arguments. First, he suggested for the first time at oral argument that because *Liese* arose under Title III of the ADA, rather than Title II, "official"-ness is inapposite here. But we have clearly employed the *Liese* standard in the Title II context. *See J.S.*, 877 F.3d at 987 (stating that "[u]nder Title IX (and, by extension, Title II and § 504), a plaintiff may establish intentional discrimination by showing deliberate indifference," and reciting the *Liese* standard). Second, Silberman contended for the first time in his reply brief that MDT can be liable under the doctrine of respondeat superior. But that argument isn't properly before us either. *See United States v. Evans*, 473 F.3d 1115, 1120 (11th Cir. 2006) ("[A]rguments raised for the first time in a reply brief are not properly before a reviewing court."). MDT didn't have an opportunity to respond to either of Silberman's newly-raised theories of liability, and as we did in *Liese*, we decline to address them. *See* 701 F.3d at 349 n.10 ("The plaintiffs' mention of vicarious liability as an appropriate standard in one sentence in their reply brief constitutes a waiver of this argument."). We do note, however, that contrary to Silberman's suggestion at oral argument, the availability of respondeat superior for Title II and the § 504 claims remains an open question. *See T.W.*, 610 F.3d at 604. On the one hand, in *T.W.* we pointed to our decision in *Mason v. Stallings*, 82 F.3d 1007 (11th Cir. 1996), as authorizing vicarious liability under Title I of the ADA—the employment chapter. On the other hand, there may be reason to think that *Mason*'s logic doesn't extend to Title II and § 504, given that the Supreme Court rejected respondeat superior liability under Title IX in *Gebser*—the case from

15

With the proper legal standard in mind, we will first address Silberman's

§ 504 claim, which the district court rejected on the merits, and then turn to his

Title II claim, which the district court found barred by the Eleventh Amendment.

**B**

The parties don't dispute that MDT receives federal funding and is therefore

subject to § 504. They do dispute, though, whether Silberman has identified an

"official" within the meaning of *Liese*. As already explained, Silberman does not

allege that Ortega or any other managerial employee discriminated against him.

(And with good reason, as the record makes clear that Ortega responded to, and at

least seems to have addressed, Silberman's complaints. *See supra* at 3–4.)

Instead, Silberman maintains that the bus drivers themselves are *Liese*-qualifying

"officials."[7]

We have little difficulty concluding that MDT bus drivers are not qualifying

"officials." With all due respect, they simply aren't high enough up the org chart

to permit a reasonable inference that, through their actions, they speak for  MDT as

a whole. To be clear, it's not enough that one be an "official" in the abstract—

which we derived the *Liese* standard. *Gebser*, 524 U.S. at 285. Resolution of this debate will have to await another day.

[7] While there may be some inconsistency between Silberman's current position and his statement in his motion for reconsideration that "a[n] MDT 'official' did not intentionally or deliberately discriminate" against him, we will assume—perhaps generously—that what he meant there was that he was not subject to discrimination at the hands of anyone *other than MDT bus drivers*.

16

which is to say, potentially any employee. *Liese*, 701 F.3d at 349. Rather, "the official [must] have the knowledge of *and authority* to correct an entity's discriminatory practices." *Id.* (emphasis added). Bus drivers—akin to what the First Circuit has called "line employee[s]," *Gray v. Cummings*, 917 F.3d 1, 17 (1st Cir. 2019)—just don't fit that bill. *See also Doe v. Sch. Bd. of Broward Cty., Fla.*, 604 F.3d 1248, 1255 (11th Cir. 2010) (holding that "janitorial supervisor was plainly not high enough up the chain-of-command" to impose liability on a school district).

To be sure, an "official" needn't be so high up the chain of command that she is "authorized to set an entity's policy." *Liese*, 701 F.3d at 349–50. But she must be high enough that her actions "constitute an official decision by the [entity] itself not to remedy the misconduct." *Doe*, 604 F.3d at 1255 (internal quotation marks and citation omitted). That, we have said, requires "substantial supervisory authority." *Liese*, 701 F.3d at 350. *Liese* itself—which concerned a hospital's failure to provide sign-language interpreters to deaf patients—is illustrative. There, we held that a reasonable jury could conclude that doctors had the necessary supervisory authority because they "could overrule a nurse's decision to not provide" an accommodation and because no evidence suggested that the doctors' decisions "were subject to reversal" by anyone else. *Id.* Conversely, we indicated that nurses were not "officials" because, unlike the doctors, they didn't enjoy

17

"complete discretion" over whether to provide an accommodation. On the *Liese* spectrum, it seems obvious to us that MDT bus drivers are more akin to the nurses than the doctors. *See also, e.g.*, *J.S.*, 877 F.3d at 988–91 (holding that a school principal could be an "official" because she was responsible for "[s]upervis[ing] assigned personnel, conduct[ing] annual performance appraisals, and mak[ing] recommendations for appropriate employment actions," and that even teachers could qualify because they were "responsible for instruct[ing] and supervis[ing] the work of volunteers and aides when assigned," but that coaches couldn't because there was no evidence that they "maintained a supervisory role over [teacher's aides]").

Silberman insists that MDT bus drivers are "officials" because they enjoy "complete discretion at a key decision point" in the "administration of MDT's public transportation services"—as evidenced by their ability to deny Silberman's point-of-service request to travel with Oscar. Silberman's argument fails for two reasons. First, it reads the "key decision point" language (which comes from *Liese*) out of context. The relevant question is not whether the drivers had "complete discretion" to make the initial decision to deny Silberman services, but rather whether they had discretion at a "key decision point *in the administrative process*"—which they plainly didn't. *Liese*, 701 F.3d at 350 (emphasis added). Second, Silberman's argument proves too much. If it were enough that the bus

18

drivers here played a key role in the decision to deny Silberman an accommodation in the first instance, the definition of "official" would be so broad as to encompass "every single employee" who is in a position to grant or deny an individual service. *Id*. at 349.  That reading would "essentially eviscerate[] the requirement that there be a decision by an official," *id.*, thereby reducing the *Liese* standard to a variant of vicarious liability and making compensatory damages the rule rather than the exception.  *Cf. also Santiago v. Puerto Rico*, 655 F.3d 61, 75 (1st Cir. 2011) ("Title IX does not sweep so broadly as to permit a suit for harm-inducing conduct that was not brought to the attention of someone with authority to stop it.").  Put simply, if MDT bus drivers are "officials," then everyone is.

One final point: It's no answer to say that we can't conclude that MDT bus drivers are "officials" at the motion-to-dismiss stage.  Although the *Liese* inquiry is "necessarily" "fact-based," *J.S.*, 877 F.3d at 987,  that doesn't mean that the mere incantation of "official"-ness entitles Silberman to discovery.  Missing here are the key ingredients that have come to define the *Liese* test—namely, the action (or inaction) of an individual with "substantial supervisory authority" within MDT's "chain of command" who knows that discrimination has taken place and is in a position to do something about it.  *Liese*, 701 F.3d at 350.  Silberman's complaint doesn't create a "reasonable expectation that discovery will reveal evidence" that fills in those gaps, and, accordingly, his claims haven't crossed "the line from

conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007).

* * *

For the foregoing reasons, we hold that the district court correctly concluded that Silberman hasn't stated—and couldn't state—a claim for compensatory damages under § 504 of the Rehabilitation Act.

## C

Which brings us, at last, to Silberman's Title II claim—what's left of it, anyway. Having rejected Silberman's § 504 claim on the merits, the district court (in adopting the magistrate judge's R&R) declined to reach Silberman's Title II claim on the ground that the "Eleventh Amendment immunity bars" it. In doing so, the district court apparently assumed that the County (and by extension, MDT) is entitled to sovereign immunity in the first place. It's a dubious assumption.

"Under the traditional Eleventh Amendment paradigm, states are extended immunity, counties and similar municipal corporations are not, and entities that share characteristics of both require a case-by-case analysis." *U.S. ex rel. Lesinski v. S. Fla. Water Mgmt. Dist.*, 739 F.3d 598, 601 (11th Cir. 2014) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)). Although it's possible that MDT might be an arm of the state that partakes of the state's immunity, the district court didn't even allude to the four-factor test that we

20

outlined for assessing arm-of-the-state issues.  *See Manders v. Lee*, 338 F.3d 1304, 1309 (11th Cir. 2003) (en banc) (explaining that, to determine whether an agency is an arm of the state, courts should ask "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity").

Despite our misgivings about the district court's sovereign-immunity analysis, we needn't remand for a redo.  We can affirm where the district court reaches the correct result but for the wrong reasons.  *See Clements v. LSI Title Agency, Inc.*, 779 F.3d 1269, 1273 (11th Cir. 2015).  Specifically, where we determine that a district court has erroneously dismissed a complaint on a particular ground, but has done so without reaching the merits—say, because it incorrectly concluded that the plaintiff lacked standing—"the dismissal of the . . . complaint must [nevertheless] be affirmed" if the "complaint fails to state a claim."  *Id.* (quoting *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)).

Just so here.  Because sovereign immunity can be waived, our precedent allows us to "bypass" the threshold question whether an entity is entitled to sovereign immunity where it only "conditional[ly] assert[s]" the defense.  *McClendon v. Ga. Dep't of Cmty. Health*, 261 F.3d 1252, 1259 (11th Cir. 2001).  That is, the entity is free to argue that "that we can dismiss this lawsuit either because the Eleventh Amendment deprives us of jurisdiction to consider it, or

because [a plaintiff's] complaint fails to state a claim upon which relief can be granted." *Id.* at 1257–58.  Therefore, we can—as MDT asks us to do—assume without deciding that it is *not* entitled to sovereign immunity under the Eleventh Amendment and then rule on the merits of Silberman's Title II claim.  And because we've already concluded that Silberman hasn't stated a claim for compensatory damages under § 504, his Title II claim—which, as we have said, is governed by identical standards—is similarly doomed.[8]

*  *  *

It's clear that Silberman hasn't stated a claim for compensatory damages.  What's more—and critical for futility purposes—the record makes clear that Silberman *can't* state such a claim.  He conceded that no one other than MDT bus drivers discriminated against him.  And as we have held, the bus drivers aren't "officials" for § 504 or Title II purposes, as they must be to support a compensatory-damages claim.  We therefore conclude that remand to allow Silberman to substitute the County for MDT as the proper defendant would be

---

[8] Because we find that we needn't address the sovereign-immunity issue, we can bracket the United States' contention, which it presses as amicus curiae, that the district court's decision "rests on a premature and incorrect analysis of Congress's power to abrogate States' Eleventh Amendment sovereign immunity," specifically as it applies to the question whether Congress validly abrogated sovereign immunity in enacting Title II as applied to the conduct at issue here. Br. of United States at 8, 17.

futile because here, unlike in *Woldeab*, "a more carefully drafted complaint could not state a claim." 885 F.3d at 1291.[9]

## IV

In sum, we affirm the district court's decision to dismiss Silberman's complaint on the ground that MDT is not *sui juris* under Florida law. Moreover, we hold that under Federal Rule of Appellate Procedure 43 we cannot substitute the County in place of MDT on appeal. Rather, substitution would be available only if Silberman were to amend his complaint before the district court. Remand to allow Silberman to do so, however, would be futile, because Silberman cannot otherwise state a claim for compensatory damages under either § 504 or Title II.

**AFFIRMED.**

---

[9] A bit of housekeeping: Even if the district court erred in dismissing Silberman's Title II claim with prejudice on Eleventh Amendment grounds, it correctly dismissed the complaint as a whole without prejudice. And because further amendment would be futile, we needn't vacate the district court's decision with instructions to dismiss the Title II claim without prejudice instead.

23