**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 23-12754

————————————————

KEVIN LEWIS,

*Plaintiff-Appellant,*

*versus*

SHERIFF, FULTON COUNTY GEORGIA,
FULTON COUNTY, GEORGIA,
SHERIFF, CHATHAM COUNTY GEORGIA,
CHATHAM COUNTY, GEORGIA,

*Defendants-Appellees.*

————————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:22-cv-00532-JCF

————————————————

Before JILL PRYOR, NEWSOM, and LAGOA, Circuit Judges.

JILL PRYOR, Circuit Judge:

Plaintiff Kevin Lewis is legally blind. After being arrested on an outstanding warrant, he was detained in Georgia for less than 48 hours at the Chatham County jail and for approximately 16 days at the Fulton County jail. At both jails, he was denied help reading documents, navigating the jail, accessing the grievance process, and receiving desired medications. Also, despite his requests for assistance, he was not afforded certain accommodations for using jail telephones and kiosks.

Lewis contends that the county sheriffs who supervised the jails unlawfully discriminated against him. He sued Chatham County Sheriff John Wilcher and Fulton County Sheriff Patrick Labat, seeking monetary damages and injunctive relief under § 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act.

The district court granted summary judgment to the sheriffs. After careful review, and having heard oral argument, we affirm the district court's decision. We hold that the district court did not err in granting summary judgment to the sheriffs on Lewis's claims for money damages because his evidence was insufficient to create a genuine issue of material fact on whether the sheriffs *intentionally* discriminated against him. And his claims for injunctive relief are moot because he is no longer in jail.

# I .  BACKGROUND

In the section that follows, we discuss Lewis's experiences at the Chatham County jail and the Fulton County jail. We then lay out his lawsuit's procedural history.

## A. Lewis's Experience at the Chatham County Jail

In 2020, the Savannah Police Department in Chatham County, Georgia arrested Lewis on an outstanding arrest warrant from Fulton County, Georgia.[1] He was taken for pre-trial detention to the Chatham County jail, where he immediately faced challenges due to his blindness. Even after he requested assistance, jail staff refused to assist him in navigating the jail premises by guiding him or letting him know how many steps to take to get from one location to another.

Lewis had a medical evaluation at the Chatham County jail, where CorrectHealth was the third-party medical contractor responsible for inmate care. CorrectHealth policy required all inmates to be advised of medical grievance procedures during their "intake." Doc. 71-9 at 2.[2] During his intake, Lewis informed the nurse of his blindness and that—per his doctor's recommendations—he needed specific over-the-counter eye drops, ibuprofen, and a riboflavin vitamin. A physician's assistant wrote prescriptions

---

[1] Because the district court granted summary judgment against Lewis, we consider the record in the light most favorable to him. *See Feliciano v. City of Mia. Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013).

[2] "Doc." refers to the district court's docket entries.

for the eye drops and other medications and sent them to the pharmacy. Lewis received most of the medications. But the eye drops did not arrive until after he had been discharged for transfer to the Fulton County jail.

Lewis was assigned to an individual, ADA-approved cell in the Chatham County jail's booking and receiving area, where he could receive 24-hour medical supervision. He made one phone call at check-in. Then, he was unable to make any other calls because even though there was a braille-equipped phone in his cell, he could not read braille. He repeatedly requested assistance with the phone, but no one would assist him.

## B. Lewis's Experience at the Fulton County Jail

After less than 48 hours at the Chatham County jail, Lewis was transferred to the Fulton County jail, where he was held for about two more weeks. On the day after he was transferred, he was placed in the facility's Medical Observation Unit, where he remained for the rest of his confinement. In this unit, Lewis received "his allergy medicine, Advil, and some usable eyedrops—but not the ones he asked for." Doc. 84 at 4.

Lewis maintains that he needed assistance while in the jail to make requests for accommodations and to access the jail's grievance procedures, its telephones, and other critical services administered through the jails' system of kiosks. He says that such help was hard to come by until nearly the end of his confinement.

Regarding the accommodation-request process, Lewis repeatedly tried to elevate concerns ranging from needing verbal

instructions on how to use the showers to being ignored when he asked for soap, toilet paper, and supplies to clean up his sick cell-mate's feces. According to Fulton County jail officials, staff are required to assist visually impaired inmates with submitting accommodation requests and in "understanding the grievance process and in completing the process." Doc. 76-6 at 7. But Lewis was neither advised of the jail's accommodation request procedure nor informed about the jail's grievance procedures.[3] Because he never received this guidance, he never made formal requests for disability accommodations nor filed any grievances while in the Fulton County jail.

Lewis similarly struggled to access the Fulton County jail's phones and other critical services administered through jail kiosks. He requested assistance with using the phones and kiosks multiple times because neither was suitable for use by a visually impaired person. When he would ask guards for assistance with the phones, they would respond by instructing him to set up voice recognition—but nobody helped him set up voice recognition until nearly the end of his confinement.

After approximately two weeks in custody at the Fulton County jail, Lewis was released on bond. Shortly after, the State of Georgia dropped its criminal charges against him.

### C. Procedural History of Lewis's Lawsuit

---

[3] Lewis was given an inmate handbook on the final day of his confinement. But the handbook cannot be read by visually impaired persons.

In early 2022, Lewis sued Chatham County and Fulton County, as well as Sheriff Wilcher and Sheriff Labat in their official capacities. In his amended complaint, he raised claims under 42 U.S.C. § 1983, § 504 of the Rehabilitation Act, and Title II of the ADA. He sought money damages and injunctive relief.

Following discovery, the district court granted summary judgment to defendants on all claims. The court focused on Lewis's ADA and Rehabilitation Act claims against the sheriffs, which are the only claims at issue in this appeal.[4]

Explaining that the causes of action under the ADA and the Rehabilitation Act "are essentially identical," the district court concluded that these claims can "be considered simultaneously." Doc. 89 at 15. The court noted that both statutes require a plaintiff raising a disability discrimination claim to show that the plaintiff, "by reason of" his or her disability, was "excluded from the participation in" or "denied the benefits of" some program or activity that fell within the purview of the statutes. *Id.* at 14–15; *see* 42 U.S.C. § 12132; 29 U.S.C. § 794(a). Also, to seek compensatory damages for these claims, a plaintiff must prove that the defendant

---

[4] The court granted summary judgment for the sheriffs on Lewis's § 1983 money damages claims, concluding they were immune because they were sued in their official capacities. The court also granted summary judgment to the counties on all claims, deciding that the counties had not been shown to be "actually responsible" for the conditions in the county jails or "for the actions of county sheriffs on a *respondeat superior* theory." Doc. 89 at 14 (citation modified). The § 1983 claims and claims against the counties are not before us on appeal.

"engaged in intentional discrimination." Doc. 89 at 15 (citing *Silberman v. Mia. Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019)).

To conduct its analysis, the district court examined Lewis's three "core contentions": that he had been denied reasonable accommodations (1) during the booking process at both jails; (2) when both jails failed to provide his requested medicated eye drops; and (3) when he was subjected to unsanitary conditions at the Fulton County jail. Doc. 89 at 17.

Regarding the booking process, the district court construed in Lewis's favor evidence that jail officers "failed to count paces, describe his surroundings, offer explanations, assist him in using the phone[,] and . . . answer his questions about the documents he was being made to sign." *Id.* But the court decided this evidence was not enough to show him being "denied the benefits of his arrest and booking." *Id.* (citation modified).

As to Lewis's eye drops requests at both jails, the district court identified "uncontroverted record evidence" that the Chatham County jail "did prescribe and order" Lewis's requested eye drops, but they did not arrive at the pharmacy until after he had been transferred to the Fulton County jail, which "did provide [him] with usable eye-drops, albeit not the ones he requested." *Id.* at 18 (citation omitted). The court explained that the law entitles a disabled prisoner "to reasonable accommodations, not to optimal ones finely tuned to his preferences." *Id.* It then determined that the jails' "non-perfunctory efforts" to provide eye drops precluded a finding of unlawful discrimination. *Id.* at 19.

8                    Opinion of the Court                    23-12754

Regarding Lewis's evidence of unsanitary conditions at the Fulton County jail, the district court decided that he could not establish that the poor conditions existed "because he was disabled." *Id.* To the contrary, jail residents were subjected to these conditions regardless of whether they had disabilities. Further, the court observed that Lewis presented no evidence of "intent on the part of Sheriff Labat" to discriminate against him as to these conditions. *Id.* at 20.

Finally, the district court decided that Lewis's ADA and Rehabilitation Act "claims for prospective injunctive relief [were] moot in light of his release from custody and dismissal of his criminal charges." *Id.* at 21.

On appeal, Lewis makes two arguments. First, he argues that the district court erred in deciding that he could not succeed on the merits for both his ADA and Rehabilitation Act claims for damages. Second, he argues that the district court erred in deciding that his claims for injunctive relief were moot because they fell under the "capable of repetition, but evading review" exception.[5]

---

[5] Lewis raises a third argument on appeal, that the district court erred in analyzing together his ADA and Rehabilitation Act claims. But because this argument is foreclosed by binding precedent, we discuss it no further. *Silberman*, 927 F.3d at 1133–34 ("Given the textual similarities between the two statutes, the same standards govern claims under both, and we rely on cases construing Title II and § 504 interchangeably. . . . In other words, whatever we have said—or say now—about Title II goes for § 504, and vice versa." (citation modified)).

## II. STANDARDS OF REVIEW

We review *de novo* the district court's grant of summary judgment, construing the facts and drawing all reasonable inferences in favor of the nonmoving party. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1291–92 (11th Cir. 2012). Summary judgment is appropriate if the record gives rise to "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

We review questions of law *de novo*. *Jones v. United Space All., L.L.C.*, 494 F.3d 1306, 1309 (11th Cir. 2007). We review the question of mootness *de novo* as well. *FTC v. On Point Cap. Partners LLC*, 17 F.4th 1066, 1078 (11th Cir. 2021).

## III. DISCUSSION

Lewis appeals the grant of summary judgment only as to his ADA and Rehabilitation Act claims for monetary and injunctive relief against Sheriffs Wilcher and Labat in their official capacities. We organize our discussion of his claims in two parts. First, we address his claims for damages, holding that he failed to come forward with evidence that the defendant sheriffs engaged in intentional discrimination—a requirement for damages claims under both the ADA and the Rehabilitation Act—against him. Second, we address his injunctive relief claims, holding that these claims are

moot. Thus, the district court properly granted summary judgment in the sheriffs' favor.

## A.    Damages Claims

### 1.    Relevant Legal Standards

We begin with the relevant legal standards applicable to Lewis's disability discrimination claims for damages. He raises these claims under two statutes. First, he invokes Title II of the ADA, which mandates that "no qualified individual with a disability shall, by reason of such disability . . . be subjected to discrimination by any [public] entity." 42 U.S.C. § 12132. Second, he invokes § 504 of the Rehabilitation Act, which similarly prohibits disability discrimination by "any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Both provisions "are enforceable through private causes of action." *Barnes v. Gorman*, 536 U.S. 181, 185 (2002).

Title II and § 504 claims are analyzed together. "Given the textual similarities between the two statutes, the same standards govern claims under both, and we rely on cases construing Title II and § 504 interchangeably." *Silberman*, 927 F.3d at 1133 (citation modified). Indeed, Title II explicitly states that "[t]he remedies, procedures, and rights set forth in [the Rehabilitation Act] shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of . . . this title." 42 U.S.C. § 12133.

Under both statutes, a plaintiff raising a disability discrimination claim must show that (1) he is a "qualified individual with a

disability"; (2) who was "excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity"; and (3) such "exclusion, denial of benefit, or discrimination was by reason of [the] disability." *Silberman*, 927 F.3d at 1134 (citation modified).

An additional requirement is imposed on a plaintiff seeking damages for a discrimination claim. "To recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant." *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 345 (11th Cir. 2012) (citation omitted).

To meet the intentional discrimination standard, the plaintiff must establish that the defendant acted with "deliberate indifference"—in other words, that the defendant is "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the entity's behalf and had actual knowledge of discrimination in the entity's programs and failed adequately to respond." *Ingram v. Kubik*, 30 F.4th 1241, 1257 (11th Cir. 2022) (citation modified). Further, the defendant official cannot be held liable for intentional discrimination under a theory of "vicarious liability," which "is unavailable under Title II" or "under section 504." *Id.* at 1258 (citation modified).

2.    Evaluating Lewis's Damages Claims

Keeping these standards in mind, we evaluate Lewis's disability discrimination damages claims. We proceed on the

assumption that he meets the first three elements of these claims. First, the parties agree that Lewis is blind and therefore is a "qualified individual with a disability." *Silberman*, 927 F.3d at 1134 (citation modified). Second, construing the facts in his favor on summary judgment review, we assume that Lewis was "excluded from participation in or denied the benefits of" the jails' "services, programs, or activities, or was otherwise discriminated against" by the jails. *Id.* (citation modified). Third, we assume that Lewis's exclusion, denial, or discrimination occurred "by reason of [his] disability."[6] *Id.* (citation modified).

Lewis's case turns on the final element of a disability discrimination damages claim: whether the plaintiff can establish "intentional discrimination on the part of the defendant." *Liese*, 701 F.3d at 334 (citation omitted). We conclude that Lewis cannot establish intentional discrimination by the defendant sheriffs.

The record reveals no evidence that the sheriffs intentionally discriminated against Lewis. Wilcher swore in his affidavit that he "d[id] not believe [he] kn[ew], met, or [had] spoken with" Lewis

---

[6] By making this assumption, we are not suggesting that Lewis's evidence was sufficient to establish that he experienced discrimination, denial of benefits, or exclusion from participation "by reason of" his disability. *Silberman*, 927 F.3d at 1134 (citation modified). For example, Lewis says that his many requests for sanitizing wipes, a mop, and other cleaning supplies went ignored. Yet he offered no evidence that these requests were ignored "by reason of" his disability. *Id.* That said, we forgo further analysis of this issue because his failure to establish intentional discrimination by the defendants is dispositive of his claims.

and did not receive any grievance complaints about mistreatment at the Chatham County jail from him. Doc. 72-12 at 3. A member of the Fulton County Sheriff's Office said he "didn't have any grievances under Mr. Lewis," either. Doc. 80-1 at 11. And Lewis presented no evidence indicating that either sheriff knew about his mistreatment.

As discussed above, to recover under an intentional discrimination standard, the plaintiff must come forward with evidence that the defendant official "had actual knowledge of discrimination in the entity's programs and failed adequately to respond." *Ingram*, 30 F.4th at 1257 (citation omitted). By failing to establish that the sheriffs possessed this knowledge, Lewis cannot recover damages from them under Title II or § 504.

## B.    Injunctive Relief Claims

Besides damages, Lewis sought prospective injunctive relief. We hold that Lewis's claims for prospective relief are moot because he is no longer in detention and the "capable of repetition yet evading review" exception does not apply.

"An issue becomes moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Mobley v. Palm Beach Cnty. Sheriff's Dep't*, 783 F.3d 1347, 1352 (11th Cir. 2015) (citation modified). We have applied this rule specifically to prisoners who bring claims for injunctive relief after being released from custody. In this Court, "[t]he general rule . . . is that a transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief." *Smith v.*

*Allen*, 502 F.3d 1255, 1267 (11th Cir. 2007). "The reason for this rule is that injunctive relief is a prospective remedy, intended to prevent future injuries." *Id.* (citation omitted).

Here, Lewis brought his suit for injunctive relief in early 2022 after being released from detention in the fall of 2020. As a pre-trial detainee, his situation is akin to those who served in prison. Thus, his claim falls under the general mootness rule for the injunctive relief claims of prisoners who have been released from custody.

Lewis argues nonetheless that his injunctive relief claims meet this Court's "capable of repetition, yet evading review" exception to mootness. We have held that this "narrow" exception "can be invoked only when (1) there is a reasonable expectation or a demonstrated probability that the *same* controversy will recur involving the *same* complaining party, and (2) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration." *Soliman v. United States ex rel. INS*, 296 F.3d 1237, 1242–43 (11th Cir. 2002) (emphasis in original) (citation modified).

Here, Lewis cannot meet the first prong of the mootness exception because there is not "a reasonable expectation or a demonstrated probability" of him being incarcerated again. *Id.* (citation modified). After he was released from pre-trial detention, the State of Georgia dropped its charges against him. The record contains no evidence indicating that Lewis may be incarcerated again. As Lewis himself notes, he is "in no hurry to prove 'a reasonable

expectation or a demonstrated probability' he will soon be arrested again." Appellant's Br. 31.

Thus, Lewis's claim for injunctive relief is moot. This issue "no longer presents a live controversy with respect to which the court can give meaningful relief." *Mobley*, 783 F.3d at 1352.

## IV. CONCLUSION

For the above reasons, we affirm the district court's grant of summary judgment to Sheriffs Wilcher and Labat.

**AFFIRMED.**