[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-15144
_____

D.C. Docket No. 1:17-cv-01034-WSD

AARON PRIVATE CLINIC MANAGEMENT LLC,

Plaintiff-Appellant,

versus

FRANK W. BERRY, in his official capacity as Commissioner of the Georgia
Department of Community Health, and
NATHAN DEAL, in his official capacity as Governor of Georgia,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(January 4, 2019)

Before TJOFLAT, WILLIAM PRYOR, and GILMAN,[*] Circuit Judges.

WILLIAM PRYOR, Circuit Judge:

_____

[*] Honorable Ronald L. Gilman, United States Circuit Judge for the Sixth Circuit, sitting by
designation.

This appeal requires us to decide whether a limited liability company that made preliminary plans to operate a methadone clinic has standing to challenge state laws that restrict the licensure of narcotic-treatment facilities. Aaron Private Clinic Management sued certain Georgia officials after two Georgia laws temporarily suspended the issuance of new licenses for narcotic-treatment facilities and imposed additional licensing requirements for future facilities. The district court dismissed the action for lack of standing. Because the challenge to the moratorium is in part moot and because we agree with the district court that Aaron lacks standing to assert its other claims, we affirm.

## I. BACKGROUND

Aaron Private Clinic Management is a for-profit company that asserts that it "intends to meet the standards to establish an [opioid-treatment program] in Georgia." Frank Berry is the commissioner for the Georgia Department of Community Health and, in that capacity, oversees the agency that issues licenses for narcotic-treatment facilities in Georgia. Nathan Deal is the governor of Georgia, and he has the ultimate authority to direct and control the operations of the Georgia Department of Community Health.

In May 2017, Aaron filed a complaint alleging that two Georgia statutes violate section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132. First, Aaron challenges a

2

2016 statute, which it calls the "Licensing Moratorium," that enacted "[a] temporary moratorium on the acceptance of new applications for licensure of narcotic treatment programs," O.C.G.A. § 26-5-21(e). The Licensing Moratorium prohibited new applications from being accepted between June 1, 2016, and June 30, 2017. *Id.* § 26-5-21(f). Second, Aaron challenges a 2017 statute, which it calls the "License Cap," that supersedes the Licensing Moratorium and provides that Georgia's Department of Community Health must establish minimum standards of quality for narcotic-treatment programs and provides for annual or biannual open-enrollment periods for program applications, *see id.* § 26-5-40 *et seq.* The License Cap also extended the prohibition on accepting new licensure applications from June 30, 2017, to December 1, 2017. *Id*. § 26-5-46(d).

Aaron contends that the Licensing Moratorium and License Cap block it from establishing an opioid-treatment program and impose "arbitrary restrictions and burdens" on methadone clinics. Aaron asserts that it sues on its own behalf and "on behalf of its prospective patients who are opiate-addicted, who are qualified disabled under the [Americans with Disabilities Act], and who are prospective patients of [Aaron]." Counts one through four of the complaint assert that the Licensing Moratorium and the License Cap are facially invalid under the Rehabilitation Act and the Americans with Disabilities Act. Counts five and six assert an equal-protection challenge to the statutes, contending that "the State of

3

Georgia's actions and disparate treatment . . . cause disproportionate impact to [Aaron] and the disabled persons [Aaron] intends to serve." Aaron requests an award of compensatory damages and litigation expenses, a permanent injunction enjoining the defendants from continuing to violate the Americans with Disabilities Act and the Rehabilitation Act by "denying or delaying [Aaron's] ability to locate an [opioid-treatment program]" in Georgia, and a declaration that the challenged statutes are void and unenforceable.

In its complaint, Aaron alleges few facts about its plan to establish a methadone clinic. Aaron first alleges that it is a Georgia limited liability company with a principal place of business at 4403 Northside Parkway NW, Suite 1413, Atlanta, Georgia 30327. This address is the same as that of the law office of Aaron's counsel, James A. Dunlap. Aaron also alleges that it will use the "latest medical technologies, including methadone maintenance treatment, to address the physical symptoms of [opioid] addiction in combination with . . . psychotherapeutic interventions." Aaron further alleges that its prospective opiate-addicted clients are disabled under the Rehabilitation Act and the Americans with Disabilities Act, and that Aaron's programs will operate as "supervised rehabilitation programs" for persons with disabilities as described under federal law. And Aaron alleges in each count of the complaint that the challenged statutes have caused it to expend additional time and financial resources, to lose the

4

opportunity to conduct its business, and to incur "additional costs and expenses, attorney's fees, interest, and cost of capital" from "interference and delays with planning, raising investment funds, hiring, and other normal processes related to opening a business." These allegations are all the complaint contains about Aaron's plan to establish a methadone clinic.

Although Aaron offers few specifics about its proposed clinic, its complaint includes more detailed allegations about the need for methadone clinics in Georgia. Aaron alleges that the annual number of opioid overdose deaths in Georgia is skyrocketing, rising from roughly 200 in 2006 to nearly 1,000 in 2015. Aaron further asserts that many of Georgia's methadone clinics are currently overcapacity and cannot accept new patients. Aaron also contends that the lack of capacity causes a variety of harms to opioid-addicted persons, who face price gouging, longer travel and wait times, and a lack of competition for treatment options. And Aaron cites evidence suggesting that methadone treatment has proven to be effective in reducing the number of drug overdoses in a community.

After Aaron filed its complaint, the defendants moved to dismiss on several grounds, including for lack of standing. The district court granted the motion to dismiss. The court first determined that the complaint fails to establish that Aaron directly suffered an injury in fact that is "actual or imminent, not 'conjectural' or 'hypothetical.'" The court explained that the complaint alleges at most that Aaron

5

was in the early stages of the planning process, not that it would have been prepared to offer treatment to its prospective clients but for the challenged statutes. The court also stated that, although Aaron labels the requirements imposed by the License Cap as "arbitrary and discriminatory," it fails to identify any "specific rules with which it cannot comply, and does not allege why they are discriminatory or how they prevent [it] from establishing its clinic in the future." And the court observed that Aaron has not alleged that it had applied for a license and been denied, that it would be prevented from participating in the open enrollment for new licensure applications, or that it would be unsuccessful in such applications if they were submitted. The district court also rejected Aaron's contention that it had third-party standing to assert the injuries suffered by its prospective clients. The district court ruled that Aaron's third-party-standing argument failed because Aaron did not establish that it has suffered an injury in fact, that it has a close relationship to a third party that is being discriminated against, and that there is some hindrance to the third party's ability to protect his or her own interests. *See Young Apartments v. Town of Jupiter*, 529 F.3d 1027, 1042 (11th Cir. 2008). Finally, the district court ruled that, even if Aaron had sufficiently alleged direct or third-party standing, it lacks statutory standing to assert these claims under either the Rehabilitation Act or the Americans with Disabilities Act.

6

## II. STANDARD OF REVIEW

We review the dismissal of a complaint *de novo*. *Culverhouse v. Paulson &
Co.*, 813 F.3d 991, 993 (11th Cir. 2016).

## III. DISCUSSION

We divide our discussion in three parts. First, we explain that Aaron's
request for declaratory and injunctive relief regarding the temporary moratorium
on the acceptance of new licensure applications is moot. Second, we explain that
Aaron has failed to establish that it has direct standing. Third, we explain that
Aaron has failed to establish that it has third-party standing to assert the injuries of
its prospective clients.

### A. Aaron's Request for Declaratory and Injunctive Relief Regarding the Temporary Moratorium is Moot.

Although the district court did not consider and the parties have not briefed
the issue of mootness, "[i]t is incumbent upon this court to consider issues of
mootness *sua sponte* and, absent an applicable exception to the mootness doctrine,
to dismiss any appeal that no longer presents a viable case or controversy." *Hunt v.
Aimco Props.*, 814 F.3d 1213, 1220 (11th Cir. 2016) (quoting *Pac. Ins. Co. v. Gen.
Dev. Corp.*, 28 F.3d 1093, 1096 (11th Cir. 1994)). "A case is moot when it no
longer presents a live controversy with respect to which the court can give
meaningful relief." *Id.* (quoting *Ethredge v. Hail*, 996 F.2d 1173, 1175 (11th Cir.
1993)). Absent exceptional circumstances, a challenge to the enforcement of a

7

statute becomes moot when that law is no longer effective. *See Burke v. Barnes*, 479 U.S. 361, 363 (1987) (explaining that challenges to an expired statute, like those made to a repealed statute, are moot). And although the district court did not rely on mootness in dismissing the complaint, "[w]e may affirm on any ground supported by the record, regardless of whether that ground was relied upon or even considered below." *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017).

As Aaron acknowledged at oral argument, its request for declaratory and injunctive relief about the Licensing Moratorium was rendered moot by the expiration of the moratorium in June 2017, and its similar request about the License Cap's extension of the moratorium was rendered moot when that provision expired in December 2017. Because no exception to the mootness doctrine applies to these requests for declaratory and injunctive relief, they are moot, and we affirm the dismissal of them.

### B. Aaron Has Failed to Establish that It Has Article III Standing.

The district court ruled, and we agree, that Aaron lacks direct standing because it failed to plead facts establishing that it had directly suffered an actual or imminent injury in fact. Article III of the Constitution limits the subject-matter jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. Art. III, § 2. Standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

8

"In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims, and the court is powerless to continue." *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1269 (11th Cir. 2006) (citations and internal quotation marks omitted).

To establish its Article III standing, Aaron must satisfy three requirements. First, it "must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted). Second, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant." *Id.* (alterations adopted) (internal quotation marks omitted). Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotation marks omitted).

Each element of standing is "an indispensable part of the plaintiff's case" and "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* "While the proof required to establish standing increases as the suit proceeds, the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when

9

the suit was filed." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (citation omitted).

To satisfy its burden at the pleading stage, a plaintiff must "clearly allege facts demonstrating each element," *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (alteration adopted) (citation and internal quotation marks omitted), and we evaluate standing on a motion to dismiss based on the facts alleged in the complaint, *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir. 2013). To adequately allege injury in fact, it is not enough that a complaint "'sets forth facts from which we could *imagine* an injury sufficient to satisfy Article III's standing requirements,' since 'we should not speculate concerning the existence of standing, nor should we imagine or piece together an injury sufficient to give plaintiff standing when it has demonstrated none.'" *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 976 (11th Cir. 2005) (quoting *Miccosukee Tribe of Indians v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1229–30 (11th Cir. 2000)). "If the plaintiff fails to meet its burden, this court lacks the power to create jurisdiction by embellishing a deficient allegation of injury." *Id.*

Aaron contends that it suffered three injuries sufficient to establish its standing under Article III. First, Aaron asserts that the Licensing Moratorium and License Cap precluded or hindered it from developing an opioid-treatment program in Georgia and caused it to suffer lost profits. Second, Aaron alleges that

10

the challenged statutes caused it to incur "additional costs and expenses, attorney's fees, interest, and cost of capital" from "interference and delays with planning, raising investment funds, hiring, and other normal processes related to opening a business." Third, Aaron alleges that the challenged statutes discriminate against and stigmatize it. We address each proffered injury in turn and determine that Aaron has failed to establish its Article III standing.

### 1. Aaron's Alleged Injury Based on Lost Profits Is Insufficient to Establish Standing.

We begin with Aaron's assertion that the challenged statutes thwarted its plan to open a methadone clinic and caused it to suffer lost profits. The district court concluded that this alleged injury was speculative. We agree with the district court.

Although the complaint alleges that Aaron aspired to open a methadone clinic someday, it offers no facts suggesting that the "someday" was imminent or that Aaron had any concrete plan in place for bringing its clinic into operation. The most that the complaint alleges Aaron has done is form a limited liability company that will serve as a management company for future methadone clinics, and it vaguely alleges "interference and delays with planning, raising investment funds, hiring, and other normal processes related to opening a business." But these allegations are a far cry from alleging that, absent the challenged statutes, Aaron immediately intended to bring, and actually could bring, its clinic into operation.

11

And Aaron has failed to allege that it has taken *any* concrete steps—such as selecting a clinic location, securing a lease option, consulting with relevant government officials, applying for the necessary permits or certifications, or associating with potential clients—that suggest such an immediate intention or plan. Because Aaron has alleged only that it intends to found a clinic at some unspecified time in the future, its "'some day' intention[]—without any description of concrete plans, or indeed even any specification of *when* the some day will be— do[es] not support a finding of . . . 'actual or imminent' injury." *Lujan*, 504 U.S. at 564.

Ample precedent makes clear that Aaron must allege more than a bare intention to someday found a clinic. In *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), and *Jackson v. Okaloosa County,* 21 F.3d 1531 (11th Cir. 1994), the Supreme Court and this Court held that plaintiffs alleging injuries related to proposed housing projects had to establish, among other things, a "substantial probability" that the projects would come into existence absent the challenged action. *See Arlington Heights*, 429 U.S. at 264; *Jackson*, 21 F.3d at 1537–38. The plaintiffs in both decisions—unlike Aaron—met this burden by pointing to specific and concrete facts that suggested such a substantial probability. *See Arlington Heights*, 429 U.S. at 255–58 (observing that the developer of a proposed housing project was already in the

12

business of building similar housing projects, had entered into a 99-year lease and an accompanying agreement to purchase the land for the proposed project, had hired an architect and produced detailed plans for the project, and had submitted a variety of detailed plans and reports as a part of a petition for rezoning); *Jackson*, 21 F.3d at 1537–38 (observing that the bidding process for the proposed housing project was nearly completed, the project's sources of funding were established, and a bidder had submitted a bid to construct the facility at a specific proposed site). And, in other factual contexts, the Supreme Court has repeatedly explained that a plaintiff asserting that it would have engaged in an activity absent the challenged statute must establish that it was "able and ready" to do so. *See, e.g.*, *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003) (explaining that the plaintiff had standing to challenge affirmative-action policies at the defendant university because he established that he was "able and ready" to apply once the university stopped using race in admissions); *Ne. Fla. Chapter, Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) (holding that the plaintiffs had standing to challenge an ordinance giving preferential treatment to minority-owned businesses because they "demonstrate[d] that [they were] *able and ready* to bid on contracts" (emphasis added)); *Clements v. Fashing*, 457 U.S. 957, 962 (1982) (holding that plaintiff officeholders had standing because they credibly alleged that they would have announced their candidacy for other offices but for

13

the "automatic resignation" provision they were challenging). It is not enough for Aaron to allege that there exists a need for methadone clinics in Georgia in the absence of facts that would suggest its readiness to supply that need.

A plaintiff alleging that it would have opened a business absent the challenged action must point to at least some facts suggesting a likelihood that its business would have come about absent the challenged action. Aaron has alleged no supporting facts suggesting this likelihood. So its first assertion of injury fails.

### 2. Aaron's Alleged Injury Based on Additional Costs and Expenses Related to the Challenged Statutes Is Insufficient to Establish Standing.

Aaron's second asserted injury—that it incurred "additional costs and expenses, attorney's fees, interest, and cost of capital" from "interference and delays with planning, raising investment funds, hiring, and other normal processes related to opening a business"—also fails to suffice. The threadbare allegations of additional costs, expenses, and attorney's fees are so vague that they do not establish any of the elements of Article III standing. We cannot divine what these allegedly incurred costs are referring to, and so we cannot assess whether they give Aaron a sufficient stake in this appeal, whether they are fairly traceable to the challenged statutes, or whether they will be redressed by a favorable decision. *See Warth*, 422 U.S. at 508 (holding that a plaintiff must plead "*specific, concrete facts* demonstrating that the challenged [action] harm[s] him, and that he personally would benefit in a tangible way from the court's intervention" (emphasis altered)).

14

As to the allegation of "interest[] and cost of capital," it appears that Aaron is suggesting that it has some capital available for its clinic and that the challenged statutes have prevented it from putting these funds to productive use. But because Aaron has failed to allege a likelihood that its proposed clinic would imminently have come into existence absent the challenged statutes, it cannot assert that the challenged statutes, instead of Aaron's lack of concrete plans to establish its clinic, caused this injury.

### 3. Aaron's Alleged Injury Based on Stigmatization and Discrimination Is Insufficient to Establish Standing.

We also conclude that Aaron fails to establish its direct standing based on its allegation that the challenged statutes discriminate against and stigmatize it. A plaintiff alleging a stigmatic injury based on discrimination must point to "some concrete interest with respect to which [he] [is] personally subject to discriminatory treatment," and "[t]hat interest must independently satisfy the causation requirement of standing doctrine." *Allen v. Wright*, 468 U.S. 737, 757 n.22 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components*, 572 U.S. 118 (2014). Here, even if the challenged statutes discriminate against opioid-addicted persons who are disabled, Aaron has not established that it is among the class of persons whose concrete interests are affected by discriminatory treatment. Aaron is a non-disabled entity, and its claims of direct injury are speculative. Because Aaron has not been subjected to

15

discriminatory treatment, we agree with the district court that Aaron's vague assertions of stigma and discrimination cannot establish its direct standing.

4. Aaron's Remaining Arguments Regarding Standing Do Not Persuade Us.

Aaron responds that it has standing because other federal courts have held that plaintiffs whose attempts to establish methadone clinics were thwarted by local regulations had standing to challenge those regulations, but those other decisions involved plaintiffs who had taken far more concrete steps than Aaron has allegedly taken. *See, e.g.*, *A Helping Hand, LLC v. Baltimore Cty.*, 515 F.3d 356, 358–62 (4th Cir. 2008) (observing that the plaintiff "unquestionably" met the Article III standing requirements where it (1) was in the business of operating methadone clinics, (2) located a particular clinic location and signed a lease, (3) consulted with local officials about founding its clinic, (4) applied for the required federal and state certifications and permits, (5) submitted detailed plans about the requested clinic site to county officials, and (6) associated with specific prospective patients who joined as plaintiffs to the lawsuit); *see also New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293 (3d Cir. 2007); *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399 (3d Cir. 2005); *MX Grp., Inc. v. City of Covington*, 293 F.3d 326 (6th Cir. 2002). None of these decisions persuades us that Aaron has standing.

16

Aaron asserts that the lack of specific factual allegations about its plan to establish a clinic should be excused because, by failing to take actions to establish its clinic, Aaron was mitigating its damages in preparation for this suit. Yet Aaron has cited no authority suggesting that the Article III requirements for a prospective business should be set aside whenever a duty to mitigate might be implicated. Aaron must point to "specific, concrete facts demonstrating that the challenged [statutes] harm" it, *Warth*, 422 U.S. at 508, regardless of any duty it had to mitigate damages.

Aaron argues that the moratorium "preemptively blocked" the formation of relationships with potential clients. But in the absence of any non-speculative reasons to believe Aaron would have imminently opened a methadone clinic but for the challenged statutes, this argument merely piles speculation on speculation.

Aaron points out that the enforcement provision of Title II of the American with Disabilities Act states that an action may be brought by "any person alleging discrimination on the basis of disability." 42 U.S.C. § 12133. Even if this provision gave Aaron a cause of action—which we do not decide—"it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo*, 136 S. Ct. at 1547–48 (alteration adopted) (citation and internal quotation marks omitted).

17

*C. Aaron Has Failed to Establish that It Has Third-Party Standing.*

We also agree with the district court that Aaron lacks third-party standing to assert the injuries suffered by its prospective clients. A plaintiff must satisfy three criteria to bring claims on behalf of third parties: (1) the plaintiff must have suffered an "injury-in-fact" that gives it a "sufficiently concrete interest" in the dispute; (2) the plaintiff must have a close relationship to the third party; and (3) there must be a hindrance to the third party's ability to protect its own interests. *Young Apartments*, 529 F.3d at 1042 (citation omitted). Because we have held that Aaron lacks an injury in fact, its third-party-standing argument fails. And we need not reach the question whether Aaron also lacks statutory standing to assert third-party claims under the Rehabilitation Act and the Americans with Disabilities Act.

## IV. CONCLUSION

We **AFFIRM** the dismissal of Aaron's complaint for lack of jurisdiction.

18