[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13694

Non-Argument Calendar

_____

NYKA TASSIANT O'CONNOR,

Plaintiff-Appellant,

*versus*

RMC, et al.

Defendants,

DR. SHAH,
JULIE JONES,
in her individual capacity,
SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:15-cv-01387-TJC-JBT

_____

Before LUCK, LAGOA, and ANDERSON, Circuit Judges.

PER CURIAM:

Nyka O'Connor, a Florida prisoner, filed a civil rights complaint against the Reception and Medical Center, then-Secretary of the Florida Department of Corrections Julie Jones, and two physicians at the Reception and Medical Center: Dr. Osvaldo Contarini, and Dr. Guarang Shah. O'Connor alleged that the Reception and Medical Center, Secretary Jones, Dr. Contarini, and Dr. Shah were deliberately indifferent to his serious medical needs; violated his rights under the First Amendment, the Florida Constitution, the Religious Land Use and Institutionalized Persons Act, the Americans with Disabilities Act, and the Rehabilitation Act; and breached their contractual duties to provide him with adequate care. The district court dismissed without prejudice O'Connor's claims against the Reception and Medical Center for failure to state a claim, dismissed with prejudice O'Connor's claims against Secretary Jones for failure to state a claim and on sovereign immunity

grounds, granted summary judgment for Dr. Contarini and Dr. Shah, and denied O'Connor's motions for summary judgment against Dr. Contarini and Dr. Shah. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### The Complaint

In his complaint, O'Connor alleged that he attempted suicide in January 2010 by swallowing, among other "foreign bodies," a paperclip. In April, O'Connor saw Dr. Shah at the Reception and Medical Center, and Dr. Shah "ordered O'Connor to be sent to Jacksonville Memorial Hosp[ital] immediately" because "Dr. Shah feared that the swallowed paperclip . . . [was] piercing and cutting O'Connor's inside [and] would kill O'Connor." Dr. Shah performed an endoscopy and colonoscopy and told O'Connor that the paperclip was "stuck inside O'Connor" and that "Dr. Contarini would have to do a more invasive surgery."

In June, Dr. Contarini performed an "invasive" "gastro-surgery" and removed the paperclip. Since the surgery, O'Connor "has been experiencing severe gastro pains and cramps," acid reflux, and constipation. O'Connor requested "adequate med[ications]" for his "pain, cramps, acid reflux, [and] heartburns" but the Florida Department of Corrections, the Reception and Medical Center, Dr. Contarini, and Dr. Shah denied O'Connor's requests for medications. O'Connor also requested an "adequate diet" that did not include "beans" or "fatty foods that contribute[] to upset stomach and gallstones." But the Florida Department of

Corrections, the Reception and Medical Center, Dr. Contarini, and Dr. Shah denied O'Connor's dietary requests.

O'Connor also alleged that he holds "sincere Jewish [and] Siddha beliefs" and that his "religion allows fruits[,] vegetables, milk, cereal, peanut butter, bread, etc." O'Connor's religion prohibits "certain foods," including "fish, eggs, meat [and] cheese." But Dr. Contarini and Dr. Shah did "not recommend[] and/or prescribe[] O'Connor a non-standard therapeutic diet for [his] . . . religion" and the Florida Department of Corrections and the Reception Medical Center denied his request for a diet that conformed to his religious beliefs.

In March 2015, a different physician—"Dr. Quinones"—diagnosed O'Connor with "gallstones from fatty foods." Because of O'Connor's "gastro issues," Dr. Quinones "prescribed . . . a [l]ow [r]esidue [d]iet . . . , which serves meat, eggs, fatty foods, inadequate calories [and] no supplements." Dr. Quinones referred O'Connor to Dr. Contarini to remove the gallstones.

O'Connor saw Dr. Contarini at the Reception and Medical Center in May, June, July, and August 2015. During the May visit, Dr. Contarini diagnosed O'Connor with appendicitis, recommended another ultrasound "to verify gallstones," and referred O'Connor to Dr. Shah for another "endoscopy [and]/or colonoscopy." During the June visit, O'Connor told Dr. Contarini that he hadn't yet had an ultrasound, endoscopy, or colonoscopy, so Dr. Contarini wrote another prescription for the procedures. Also during the June visit, Dr. Contarini denied O'Connor's request for "a

non-standard [t]herapeutic [d]iet for his health [and] religion" and instead "simply advised O'Connor to stay away from fatty foods" and to "just eat what he could." A week after his June visit with Dr. Contarini, prison medical staff performed an ultrasound.

During the July visit, O'Connor "complained to Dr. Contarini . . . about his worsening gastro pain, cramps, acid reflux, bloody stool, inadequate diet, etc.," but Dr. Contarini "disregarded O'Connor's complaints [and] didn't remedy [them]." And during the August visit, Dr. Contarini "advised O'Connor it would be a while before [O'Connor would] see[] Dr. Shah to do [the] endoscopy [and] colonoscopy" and that O'Connor's "gastro" problems would worsen in the meantime. O'Connor "advised Dr. Contarini to do [a] less intrusive gallstone removal," but Dr. Contarini refused.

In September, O'Connor saw Dr. Shah at the Reception and Medical Center. By then, O'Connor had "bloody stool, sharp pains [and] cramps from [his] stomach to [his] anus." Dr. Shah told O'Connor that "he was suffering from the surgical scar from 2010" and "was constipated," prescribed lactulose, and ordered a "hydascan" and a colonoscopy.[1] O'Connor requested a "non-standard

---

[1] "Hydascan" appears to be a misspelling of "HIDA scan," which is a hepatobiliary iminodiacetic acid scan. *See* HIDA scan, Mayo Clinic, https://www.mayoclinic.org/tests-procedures/hida-scan/about/pac-20384701.

diet for his [h]ealth and [r]eligion," but Dr. Shah refused O'Connor's request.

Despite Dr. Contarini and Dr. Shah's orders, no HIDA scan or colonoscopy was performed.  In October, O'Connor saw Dr. Shah at the Reception and Medical Center; told Dr. Shah that he still hadn't had a HIDA scan or colonoscopy; and "continued to complain about his stomach pains, cramps[,] bloody stool, acid reflux, inadequate diet, [and] delaying inquiries."  Dr. Shah again prescribed lactulose, which caused O'Connor to have "stomach/gastro pains, cramps, pass gas, [and a] bubbling upset stomach."

Along with his gastrointestinal problems, O'Connor alleged that he has a "shoulder injury."  O'Connor's shoulder injury causes "pain, numbing[,] and tingly sensation[s]" while he sleeps and while he is "handcuffed in the rear."  The shoulder injury also prevents him from "lift[ing] heavy objects."  O'Connor requested a "heavy lifting pass," a "frontcuff pass," and "side restraints" to accommodate his shoulder injury, but the Florida Department of Corrections and the Reception and Medical Center refused his requests.

O'Connor sued in November 2015.  He alleged that the Reception and Medical Center, Dr. Contarini, and Dr. Shah were deliberately indifferent to his serious medical needs, including his gallstones, appendicitis, and "ongoing gastro issues," in violation of the Eighth Amendment and the Florida Constitution, and that Secretary Jones "ha[d] a practice, custom, policy to subject inmates to unnecessary delay to provide adequate care for serious needs."  He

alleged that the Reception and Medical Center and Secretary Jones violated the Americans with Disabilities Act and the Rehabilitation Act by failing to accommodate his "gastro disabilities" and "inter-relate[d] . . . mental disabilities [and] shoulder disabilities." He alleged that the Reception and Medical Center, Secretary Jones, Dr. Contarini, and Dr. Shah violated the First Amendment, the Florida Constitution, and the Religious Land Use and Institutionalized Persons Act by not providing a "non-standard [d]iet for [h]ealth [and] [r]eligion." And he alleged that the Reception and Medical Center, Secretary Jones, Dr. Contarini, and Dr. Shah breached their contractual duties "to provide O'Connor adequate care."

### The District Court Dismissed O'Connor's Claims Against the Reception and Medical Center

The district court screened the complaint under the Prison Litigation Reform Act and found that it failed to state a claim upon which relief could be granted against the Reception and Medical Center. O'Connor failed to state a claim against the Reception and Medical Center, the district court explained, because "[p]enal facilities are not persons subject to liability under 42 U.S.C. [section] 1983."[2] The district court therefore dismissed without

---

[2] O'Connor's complaint did not mention section 1983. But it is clear from O'Connor's allegations that he brought his federal constitutional claims under section 1983, and O'Connor was not required "to invoke [section] 1983 expressly in order to state a claim." See Johnson v. City of Shelby, 574 U.S. 10, 11 (2014). So we refer to O'Connor's Eighth Amendment deliberate

8                    Opinion of the Court                    20-13694

prejudice all of O'Connor's claims against the Reception and Medical Center.

O'Connor moved to reinstate the Reception and Medical Center as a defendant or to substitute the warden of the Reception and Medical Center in its place. O'Connor maintained that he could properly assert his Religious Land Use and Institutionalized Persons Act, Americans with Disabilities Act, and Rehabilitation Act claims against the Reception and Medical Center. And O'Connor argued that he could assert his breach of contract claim against the warden of the Reception and Medical Center in the warden's official capacity.

The district court construed O'Connor's motion "as a motion for reconsideration" and denied it. The district court explained that "[i]f [O'Connor] s[ought] to add a new defendant, he should file an appropriate request to amend" his complaint.

But rather than move to amend his complaint to add a new defendant, O'Connor filed a second motion to "re-instate [the Reception and Medical Center] as [a] defendant." He again argued that the Reception and Medical Center "should be a defendant for the purposes of [his Americans with Disabilities Act and Rehabilitation Act] claims" and for his "[b]reach of [c]ontract claims."

---

indifference claim as his "section 1983 deliberate indifference claim" and his First Amendment claim as his "section 1983 free exercise claim."

The district court denied O'Connor's second motion to re-instate the Reception and Medical Center as a defendant.

*The District Court Dismissed O'Connor's Claims Against Secretary Jones*

The district court dismissed with prejudice O'Connor's claims against Secretary Jones.  The district court dismissed for fail-ure to state a claim all of O'Connor's claims against Secretary Jones that were based on "what occurred during his 2010 surgery or his immediate post-surgery medical care" because Secretary Jones was not appointed as the Secretary of the Florida Department of Cor-rections until January 2015.

As to O'Connor's section 1983 deliberate indifference claim, the district court dismissed O'Connor's claim with respect to the delay of his gallbladder surgery because he "ha[d] not alleged suffi-cient factual matter to even infer a causal connection between any action or inaction of [Secretary] Jones and a violation of [his] rights."  And the district court dismissed O'Connor's section 1983 deliberate indifference claim with respect to his diet because he "fail[ed] to allege a causal connection between [Secretary] Jones and any alleged violation of his federally-protected rights" and "d[id] not allege sufficient factual matter to infer that a[ Florida De-partment of Corrections] policy, custom or practice . . . violate[d] his rights."

The district court dismissed for failure to state a claim O'Connor's Americans with Disabilities Act and Rehabilitation Act

claims against Secretary Jones in her individual capacity because "only public entities may be liable under the [Americans with Disabilities Act] and [Rehabilitation Act]." And O'Connor failed to state an Americans with Disabilities Act claim or a Rehabilitation Act claim against Secretary Jones in her official capacity, the district court concluded, because O'Connor did not plausibly allege that he "was discriminated against on the basis of some disability" but "bas[ed] his claims on his perceived lack of adequate medical care."

The district court dismissed for failure to state a claim O'Connor's Religious Land Use and Institutionalized Persons Act claim against Secretary Jones based on his diet because he "fail[ed] to allege a causal connection between [Secretary] Jones and any alleged violation of his federally-protected rights" and "d[id] not allege sufficient factual matter to infer that a[ Florida Department of Corrections'] policy, custom, or practice substantially burden[ed] the exercise of his religion."

The district court dismissed for failure to state a claim O'Connor's breach of contract claims against Secretary Jones because "his allegations [were] wholly deficient." The district court also dismissed O'Connor's claims against Secretary Jones "to the extent he was suing [her] in her official capacity under [section] 1983 for monetary damages" because the claims were barred by Florida's sovereign immunity. And the district court "f[ound] that any amendment [of O'Connor's claims against Secretary Jones] would be futile."

*The District Court Granted Summary Judgment for Dr. Contarini*

The district court granted summary judgment for Dr. Contarini on each of O'Connor's claims.  The district court granted summary judgment on O'Connor's section 1983 deliberate indifference claim against Dr. Contarini because the claim was "unfounded and refuted by [O'Connor's] medical records."  Dr. Contarini wasn't deliberately indifferent to O'Connor's serious medical needs, the district court explained, because Dr. Contarini "provided [O'Connor] with medical treatment including examinations, testing, and referrals" and Dr. Contarini's refusal to "perform or recommend the 'less invasive' [surgery] option that [O'Connor] requested d[id] not render [Dr.] Contarini deliberately indifferent."  The district court determined that Dr. Contarini wasn't deliberately indifferent to O'Connor's appendicitis because "[O'Connor]'s medical records and [Dr.] Contarini's affidavit reflect[ed] that [O'Connor] was never diagnosed with appendicitis."  Dr. Contarini's failure to recommend O'Connor's requested diet wasn't deliberately indifferent, the district court concluded, because O'Connor's medical records showed that Dr. Contarini "recommend a 'low fat' diet based on [O'Connor's] medical presentation" and "[O'Connor]'s disagreement with [Dr.] Contarini's recommendation d[id] not amount to a constitutional violation."  And, the district court concluded, O'Connor's medical records "support[ed] a finding that [Dr.] Contarini's failure to provide [O'Connor] with

pain or other medications based on his medical presentation [was] not deliberate indifference."

The district court granted summary judgment for Dr. Contarini on O'Connor's Religious Land Use and Institutionalized Persons Act claim because Dr. Contarini "could not prescribe the 'religious diet' [O'Connor] requested because that [was] determined at the institutional level and [Dr.] Contarini was not employed by the [Florida Department of Corrections]." And, on O'Connor's breach of contract claim, the district court granted summary judgment for Dr. Contarini because O'Connor's "allegations [were] wholly insufficient."

Because the district court granted summary judgment for Dr. Contarini on all of O'Connor's claims against him, the district court denied O'Connor's cross-motion for summary judgment.

*The District Court Granted Summary Judgment for Dr. Shah*

The district court granted summary judgment for Dr. Shah on each of O'Connor's claims. The district court granted summary judgment for Dr. Shah on O'Connor's section 1983 deliberate indifference claim because the summary judgment record showed that "[Dr.] Shah ordered a HIDA scan and colonoscopy, and he provided [O'Connor] with lactulose and then recused himself from [O'Connor]'s care when [O'Connor] sued him." "Whether to refer [O'Connor] for different tests or provide a different mode of treatment," the district court explained, "[was] a matter of medical judgment that d[id] not amount to deliberate indifference." And

"[O'Connor]'s disagreement with [Dr. Shah]'s course of treatment d[id] not support a deliberate indifference claim."

The district court granted summary judgment for Dr. Shah on O'Connor's Religious Land Use and Institutionalized Persons Act claim for two reasons. First, the district court reasoned that, because O'Connor "failed to state a claim regarding a custom, policy[,] or practice against [Secretary] Jones" with respect to his diet, it necessarily followed that O'Connor "failed to state a claim that that [Dr.] Shah upheld or 'professed' such a custom, policy, or practice." Second, "the evidence d[id] not support [O'Connor]'s claim that [Dr.] Shah violated his religion by not providing him with the requested diet" because Dr. Shah "did not have authority to prescribe it."

Finally, the district court granted summary judgment for Dr. Shah on O'Connor's breach of contract claim because it was "deficient." And because the district court granted summary judgment for Dr. Shah on all of O'Connor's claims against him, the district court denied O'Connor's cross-motion for summary judgment.

The district court entered judgment: (1) dismissing without prejudice O'Connor's claims against the Reception and Medical Center; (2) dismissing with prejudice "all claims" against Secretary Jones; and (3) granting summary judgment for Dr. Contarini and Dr. Shah. O'Connor appeals the district court's judgment.

## STANDARD OF REVIEW

We review the district court's dismissal for failure to state a claim and summary judgment de novo. *Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1207 (11th Cir. 2018). To state a claim, a "complaint must include allegations plausibly suggesting (not merely consistent with) the plaintiff's entitlement to relief." *Id.* (quotation omitted). We "accept all facts in the complaint as true and view those facts in the light most favorable to the plaintiff." *Id.* "However, conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Taylor v. Polhill*, 964 F.3d 975, 981 (11th Cir. 2020) (quotation omitted). We also review de novo a district court's conclusion that amendment would be futile. *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1093–94 (11th Cir. 2017).

For summary judgment, "the movant must demonstrate that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law." *Sun Life*, 904 F.3d at 1207 (alterations adopted and quotation omitted). In reviewing the record, we "view the submitted evidence in the light most favorable to the non-moving party." *Id.* (quotation omitted).

"We review dismissal under [section] 1915(e)(2)(B)(ii) de novo and view the allegations in the complaint as true." *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008). "The standards governing dismissals under [r]ule 12(b)(6) apply to

[section] 1915(e)(2)(B)(ii)." *Id.* "Finally, pro se pleadings are held to a less strict standard than pleadings filed by lawyers and thus are construed liberally." *Id.* (emphasis omitted).

## DISCUSSION

O'Connor argues that the district court erred in dismissing his claims against the Reception and Medical Center and Secretary Jones, granting summary judgment for Dr. Contarini, denying his cross-motion for summary judgment against Dr. Contarini, granting summary judgment for Dr. Shah, and denying his cross-motion for summary judgment against Dr. Shah. The defendants urge us to affirm across the board. And we do.

We first explain why the district court did not err in dismissing O'Connor's claims against the Reception and Medical Center. Next, we explain why the district court did not err in dismissing O'Connor's breach of contract claim against Secretary Jones and why O'Connor has abandoned any challenge to the district court's dismissal of his other claims against Secretary Jones.[3] We then

---

[3] Secretary Jones asserts that we lack jurisdiction to consider O'Connor's appeal of the district court's orders dismissing the claims against her and the Reception Medical Center because O'Connor's notice of appeal "fail[ed] to specify the orders to be appealed" and "only specifically referenced" the district court's order granting summary judgment for Dr. Shah. Secretary Jones is incorrect. O'Connor's notice of appeal states that he "appeals the final judgment." The district court's non-final orders dismissing O'Connor's claims against the Reception and Medical Center and the Secretary "merged into the judgment and [are] subject to review on appeal." *See Akin v. PAFEC Ltd.*, 991 F.2d 1550, 1563 (11th Cir. 1991) ("When a district court enters a final

explain why the district court did not err in granting summary judgment on O'Connor's breach of contract claim against Dr. Contarini and Dr. Shah and why O'Connor has abandoned any challenge to the district court's summary judgment for Dr. Contarini and Dr. Shah on his other claims against them.

### The District Court's Dismissal of O'Connor's Claims Against the Reception and Medical Center

The district court screened O'Connor's complaint under the Prison Litigation and Reform Act, concluded that the Reception and Medical Center was not subject to liability under section 1983, and dismissed for failure to state a claim all of O'Connor's claims against the Reception and Medical Center. We affirm the district court's dismissal of each of O'Connor's claims against the Reception and Medical Center.

The district court didn't err in concluding that O'Connor's section 1983 deliberate indifference claim against the Reception and Medical Center failed to state a claim. Whether a party has the capacity to be sued is "determined by the law of the state in which the district court is held." *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992); *see* Fed. R. Civ. P. 17(b). Under Florida law, the

---

judgment, 'all prior non-final orders and rulings which produced the judgment' are merged into the judgment and subject to review on appeal."). In other words, "[b]ecause [O'Connor] appeals a final judgment, jurisdiction exists under [28 U.S.C. section] 1291 regardless of whether the substance of [O'Connor]'s appeal concerns an interlocutory order." *See OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1356 (11th Cir. 2008).

Reception and Medical Center does not have an independent corporate existence. Instead, it is part of the state correctional system operated by the Florida Department of Corrections. *See* Fla. Stat. § 944.02(2) (defining "[c]orrectional system" as "all prisons and other state correctional institutions now existing or hereafter created under the jurisdiction of the Department of Corrections"). Because the Reception and Medical Center is part of the Florida Department of Corrections, it does not have the capacity to be sued. *See Maldonado v. Baker Cnty. Sheriff's Office*, 513 F. Supp. 3d 1339, 1348 (M.D. Fla. 2021) ("[A] sheriff's office, jail, or detention center is not an entity subject to suit under Florida law."). The district court therefore properly dismissed O'Connor's section 1983 deliberate indifference claim and his section 1983 free exercise claim against the Reception and Medical Center.

Although the district court did not explain its dismissal of O'Connor's non-section 1983 claims against the Reception and Medical Center, "we may affirm on any ground supported by the record, regardless of whether that ground was relied upon or even considered below." *Aaron Priv. Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330, 1335 (11th Cir. 2019) (alteration adopted and quotation omitted). The district court did not err by dismissing O'Connor's Americans with Disabilities Act, Rehabilitation Act, Religious Land Use and Institutionalized Persons Act, breach of contract, and Florida Constitutional claims against the Reception and Medical Center because the Reception and Medical Center does not have capacity

to be sued under Florida law. *See* Fed. R. Civ. P. 17(b)(3); *Maldo-nado*, 513 F. Supp. 3d at 1348.

O'Connor argues that the district court erred by "fail[ing] to allow [him] to amend his complaint to substitute" the warden of the Reception and Medical Center as a defendant. O'Connor is right that "[o]ur cases make clear that a pro se plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1132 (11th Cir. 2019) (cleaned up). But "[t]he problem for [O'Connor] is that the district court *did* give him the opportunity to amend his complaint, which—whether willfully or otherwise—he squandered by refusing to do so." *See id.*

In denying O'Connor's first motion for reconsideration of the district court's order dismissing the Reception and Medical Center as a defendant, the district court advised O'Connor that "[i]f [he] s[ought] to add a new defendant, he should file an appropriate request to amend." But O'Connor never moved for leave to amend his complaint and instead filed a second motion for reconsideration. We therefore affirm the district court's dismissal of O'Connor's claims against the Reception and Medical Center because his choice to file a second motion for reconsideration instead of a motion for leave to amend his complaint "indicated that he d[id] not wish to amend his complaint." *See id.* at 1133 ("[A]mendment is *not* warranted . . . where the plaintiff has indicated that he does not wish to amend his complaint." (cleaned up)).

*The District Court's Dismissal of O'Connor's Claims Against Secretary Jones*

Except for his breach of contract claim, O'Connor's opening brief does not explain why the district court erred in dismissing his claims against Secretary Jones.  Rather, O'Connor lists two pages of conclusory assertions, including that his claims "were all plausible" and "cognizable" and "should have proceeded beyond a [m]otion to [d]ismiss."  He also asserts that the district court "failed to abide by established precedents" without explaining which precedents by which the district court "failed to abide."  "While we read briefs filed by pro se litigants liberally, issues not briefed on appeal by a pro se litigant are deemed abandoned."  *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (citations and emphasis omitted).  Even reading O'Connor's brief liberally, he "makes no argument and cites no authorities to support [his] conclusory assertions" about why the district court erred in dismissing his non-contract claims against Secretary Jones.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682 (11th Cir. 2014) (holding that appellants abandoned an argument where their opening brief made only "conclusory assertions that [the appellants] ha[d] made four claims that [were] 'actionable'" and where "[t]he brief ma[de] no argument and cite[d] no authorities to support those conclusory assertions"); *Gulisano v. Burlington, Inc.*, 34 F.4th 935, 945 (11th Cir. 2022) (concluding that a pro se appellant abandoned his challenge to a district court's order because "[h]e failed to support the claim with arguments and citations to authority").

As to his breach of contract claim, O'Connor argues that the district court erred because the lack of a "written contract" doesn't mean that "there's no breach of contract claim" and because he "outlined the 3-prongs of a contract law claim." Under Florida law, "[t]he elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages." *Abbott Lab'ys, Inc. v. Gen. Elec. Cap.*, 765 So. 2d 737, 740 (Fla. Dist. Ct. App. 2000). To allege the existence of a valid contract, O'Connor had to allege "offer, acceptance, consideration, and sufficient specification of essential terms." *Pier 1 Cruise Experts v. Revelex Corp.*, 929 F.3d 1334, 1347 (11th Cir. 2019) (alteration omitted) (quoting *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004)).

O'Connor didn't allege the existence of a "valid contract." He alleged that Secretary Jones "entered into a contract to provide O'Connor adequate care, custody, control[,] and confinement" when she "accepted" the state sentencing court's "offer[]" of "a warrant of commitment to keep O'Connor 'safely'" and that she "breached [her] contract" by "denying [him] adequate diet, gastro, [and] shoulder care for serious medical needs [and] not accommodating[]" him. But there was no "contract" between Secretary Jones and the state sentencing court: Florida law mandates that "[e]ach prisoner sentenced to the state penitentiary *shall be committed* by the court to the custody of the department." Fla. Stat. § 944.17(1) (emphasis added). Secretary Jones's "performance of a pre-existing duty"—taking custody of O'Connor after he was sentenced—"does not amount to the consideration necessary to

support a contract." *See Slattery v. Wells Fargo Armored Serv. Corp.*, 366 So. 2d 157, 159 (Fla. Dist. Ct. App. 1979); *Schneir v. State*, 43 So. 3d 135, 137–38 (Fla. Dist. Ct. App. 2010) ("It is well settled that a promise to perform what one is already required to do by an existing contract or otherwise is not valid consideration.").

Finally, O'Connor argues that the district court erred by not granting him leave to amend his complaint because he had a "right to amend" under Federal Rule of Civil Procedure 15 and *Foman v. Davis*, 371 U.S. 178 (1962). But while "leave to amend shall be freely given when justice so requires," *Foman*, 371 U.S. at 182 (quotation omitted), "amendment is *not* warranted . . . where further amendment would be futile," *Silberman*, 927 F.3d 1123, 1133 (11th Cir. 2019). The district court determined that any amendment of O'Connor's claims against Secretary Jones would have been futile, but O'Connor doesn't challenge the district court's ruling on futility or show how "a more carefully drafted complaint might state a claim." *See id.* at 1132. He has thus abandoned any argument that the district court erred by denying him leave to amend. *See Sapuppo*, 739 F.3d at 681 (explaining that a party abandons an argument where he "do[es] not devote even a small part of [his] opening brief to arguing the merits of the district court's . . . holdings"). We therefore affirm the district court's dismissal of O'Connor's claims against Secretary Jones.

*The District Court's Summary Judgment for Dr. Contarini and*
*Dr. Shah*

O'Connor's opening brief also fails to explain why the district court erred in granting summary judgment for Dr. Contarini and Dr. Shah on his non-contract claims.[4]   O'Connor asserts that he "presented genuine issues of material facts in dispute" through "[a]ffidavits/[d]eclarations, various exhibits, grievances, etc." and that the district court "contraven[ed] *stare decisis*" by "t[aking] [Dr.] Contarini's [and Dr. Shah's] words as the gospel[] over O'Connor's words."   But "[c]onclusory allegations and speculation are insufficient to create a genuine issue of material fact," *Valderrama v. Rousseau*, 780 F.3d 1108, 1112 (11th Cir. 2015), and O'Connor does not point us to a single genuine issue of material fact.   "Apparently, he would like for us to dig through the record in an effort to turn up facts that might make his case for him.   But that is his job, not ours." *Coleman v. Hillsborough County*, 41 F.4th 1319, 1328 (11th Cir. 2022); *see Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990) ("[W]e hold that a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment.").   Thus, O'Connor has abandoned any argument that the record evidence creates a genuine issue of material fact on his non-contract claims.   *See Sapuppo*, 739

---

[4] "[W]e do not address arguments raised for the first time in a pro se litigant's reply brief." *Timson*, 518 F.3d at 874 (emphasis omitted).

F.3d 680 ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed.").

On his breach of contract claims against Dr. Contarini and Dr. Shah, O'Connor argues that he showed the existence of a valid contract based on Dr. Contarini's and Dr. Shah's "Hippocratic oath[s]"[5] and "the parameters of their license[s]." But O'Connor doesn't cite, and we haven't found, any authority to support the argument that the Hippocratic Oath or a medical license creates an implied contract between a doctor and a patient for the provision of the patients' preferred medical treatment. To the contrary, courts have held that there is no such implied contractual duty. *See, e.g., Gahl ex rel. Zingsheim v. Aurora Health Care, Inc.*, 977 N.W.2d 756, 772 (Wis. Ct. App. 2022) ("No Wisconsin court has held that the Hippocratic Oath creates an implied contract between a doctor and a patient in this context . . . ."); *Tex. Health Huguley, Inc. v. Jones*, 637 S.W.3d 202, 222–23 (Tex. Ct. App. 2021) (explaining that "[a]lthough a doctor does owe his patient an implied duty to 'do no harm,' this is merely an oversimplified way of referring to the implied doctor-patient contract" and does not "mandate[] the use of" particular treatments); *Shah v. Intermountain*

---

314 P.3d 10The Hippocratic Oath is "[a]n oath taken by physicians usually on receiving the doctoral degree, whereby they promise to observe ethical principles in the practice of medicine." *Hippocratic Oath*, Stedman's Medical Dictionary (Nov. 2014).

*Healthcare, Inc.*, 314 P.3d 1079, 1087 (Utah Ct. App. 2013) ("To the extent that the [plaintiffs'] claims allege that the [d]efendants breached their contractual obligations to [the patient] 'by failing to provide professional health care services in accordance with generally accepted standards of professionalism and good faith,' we agree with the [d]efendants that the proposed amendment is simply an effort to clothe the negligence claims in contractual language.").

We therefore affirm the district court's summary judgment for Dr. Contarini and Dr. Shah and the district court's denial of summary judgment for O'Connor on his claims against them.

**AFFIRMED.**