[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-13379

_____

MICHAEL HORTON,

Plaintiff-Appellant,

*versus*

CAPTAIN GILCHRIST,
JOHN DOE,
Officer,
RICHARD DOE,
LT. THOMAS BANDA,

Defendants-Appellees,

LIEUTENANT VANDER, et al.,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:20-cv-00464-TFM-MU

_____

Before BRASHER, HULL, and WILSON, Circuit Judges.

BRASHER, Circuit Judge:

Michael Horton, an Alabama prisoner and *pro se* plaintiff, sued two correctional officers for allegedly subjecting him to an unconstitutional body-cavity search. After requiring the officers to provide documents and other evidence and giving Horton an opportunity to respond, the district court granted the officers summary judgment and dismissed Horton's lawsuit with prejudice.

Horton argues that the district court erred in granting summary judgment without first *sua sponte* allowing him to amend his complaint to include new factual allegations. We disagree. We have held that, "[w]here a more carefully drafted complaint might state a claim, a [*pro se*] plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *limited to* pro se *litigants by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541 (11th Cir. 2002) (en banc). But the *Bank* rule applies in the context of Rule 12(b)(6) dismissals with prejudice—not in the

context of summary judgment. Accordingly, we hold that a district court need not *sua sponte* give a *pro se* plaintiff the opportunity to amend his complaint before granting summary judgment. Because the district court did not err in granting summary judgment without *sua sponte* allowing Horton to amend his complaint, we affirm.

## I.

Horton filed a complaint alleging violations of his First and Fourteenth Amendment rights and seeking, among other things, injunctive relief against being strip searched in the presence of female officers. Horton alleged that, one morning, while he was performing his assigned duties as a barber at Fountain Correctional Facility, officers conducting an institution-wide search entered the shop. Lieutenant Thomas Banda asked the officers whether anyone had searched Horton. The officers indicated that they had not, and, at that point, Captain Jody Gilchrist told Horton to turn around and prepare to be searched. Noticing that two female correctional officers were present, Horton explained that his religious views forbade him from "expos[ing] his naked body to any woman other than his wife." Gilchrist nonetheless ordered Horton to take off his clothes. Horton complied, and was made to "bend over, pull the cheeks of his buttocks up and cough" in the view of the female correctional officers. No contraband was found as a result of the search.

Horton attempted to name Banda and Gilchrist as defendants in his lawsuit but misspelled "Banda" as "Vander." Accordingly, after "Vander" could not be served, the magistrate judge

ordered Horton to advise the court of the correct name of the officer or its correct spelling. In response to that order, Horton moved to substitute "Banda" for "Vander" and to add other defendants. The magistrate judge recommended that the district court grant the substitution of Banda but deny the addition of other defendants. The district court adopted that recommendation.

The magistrate judge also ordered Banda and Gilchrist to respond to Horton's complaint with an "Answer and Special Report." The order required, among other things, that the defendants conduct discovery. Banda and Gilchrist were directed to "undertake a review of the subject matter of the complaint," "ascertain the facts and circumstances," "consider whether any action should be taken by officials to resolve the subject matter of the complaint," and "determine whether other similar complaints, whether pending in [the district court] or elsewhere, should be considered together." The magistrate judge further instructed that the special report should contain "the sworn statements of all persons having knowledge of the subject matter of the complaint," and, whenever relevant, "certified copies of medical and/or psychiatric records."

Banda and Gilchrist investigated Horton's claims and submitted the requested materials to the court. The magistrate judge then notified the parties that the submissions would be converted to motions for summary judgment and advised Horton that "the granting of this motion would represent a final adjudication of this action, which may foreclose subsequent litigation on this matter." The magistrate judge gave Horton about two months to file

materials in opposition to summary judgment and explained to him that "a plaintiff against whom a motion for summary judgment is filed must oppose that motion by affidavits or declarations, depositions, answers to interrogatories, admissions, or as otherwise provided in the rules," that an affidavit must be "sworn to and subscribed before a notary public," and that a declaration must be "signed under penalty of perjury."

Despite these instructions, Horton responded to Banda's and Gilchrist's materials with an unsigned declaration that included new facts and new legal claims. For example, Horton alleged, for the first time, that he had been searched multiple times instead of once. The magistrate judge refused to consider the declaration for the purposes of summary judgment because it was not signed or dated but instead relied only on the complaint, which was signed under penalty of perjury, and Banda's and Gilchrist's evidentiary materials and arguments.

After reviewing the evidentiary materials, the magistrate judge recommended that summary judgment be granted for the defendants. The district court adopted the magistrate judge's recommendation. Horton filed a motion to alter, vacate, or amend the judgment, and the district court denied it All in all, the litigation spanned about three years.

Horton appealed.

**II.**

We would normally review a district court's decision to grant summary judgment *de novo*. *Sylvester v. Fulton Cnty. Jail*, 94 F.4th 1324, 1329 (11th Cir. 2024). But Horton does not argue that an issue of material fact precluded summary judgment. Instead, he argues only that the district court should have *sua sponte* allowed him to amend his complaint in response to the defendants' evidentiary submission. We review that kind of decision—a decision about whether to allow an amendment to a complaint—for abuse of discretion. *See Troville v. Venz*, 303 F.3d 1256, 1259 (11th Cir. 2002).

## III.

Horton makes three arguments that the district court abused its discretion by granting summary judgment without first offering him the opportunity to amend his complaint. First, he argues that the *Bank* rule required the district court to *sua sponte* allow him the opportunity to amend his complaint before ruling against him at any point during the litigation. Second, he contends that, at least when a district court employs the special report procedure, a *pro se* plaintiff should be allowed to amend before summary judgment. Third, apart from those proposed legal rules, he argues that the district court's failure to *sua sponte* allow amendment is unfair on the unique facts of his case. We consider, and reject, each argument in turn.

Horton's first argument overreads *Bank* and would extend that precedent beyond its facts and rationale. In *Bank*, the plaintiffs appealed a district court's with-prejudice dismissal of their

23-13379                Opinion of the Court                7

complaint for the failure to state a claim. 928 F.2d at 1109. There, we reasoned that, because a "complaint should not be dismissed under Fed. R. Civ. P. 12(b)(6) 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief' . . . a district court should give a plaintiff an opportunity to amend his complaint instead of dismissing it." *Bank*, 928 F.2d at 1112. But we explained that, "if a more carefully drafted complaint could not state a claim under the [12(b)(6) standard], dismissal with prejudice is proper" without first granting leave to amend. *Id.*

On its own terms, *Bank* has no application at the summary judgment stage of a lawsuit. *Bank* was expressly limited to dismissals that—unlike summary judgments—are based on a complaint's allegations. Specifically, we held in *Bank* that "[a] complaint should not be dismissed *under* [Rule] 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See id.* at 1111–12 (emphasis added) (internal marks omitted). We later limited the *Bank* rule to *pro se* plaintiffs, explaining that the *Bank* rule allowed a plaintiff to "sit idly by as he awaited the district court's determination *with respect to a Rule 12(b)(6) motion to dismiss.*" *Wagner*, 314 F.3d at 543 (emphasis added). And we have routinely applied the *Bank* rule in appeals involving Rule 12(b)(6) dismissals with prejudice, but never to a summary judgment. *See Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1130, 1132–33 (11th Cir. 2019) (Rule 12(b)(6) dismissal); *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1290–91 (11th Cir. 2018) (same); *Silva v. Bieluch*, 351 F.3d 1045, 1046, 1048–49

(11th Cir. 2003) (same); *O'Halloran v. First Union Nat. Bank of Fla.*, 350 F.3d 1197, 1206 (11th Cir. 2003) (same).

Even if the express holding of *Bank* itself did not answer this question, it would make little sense to apply the *Bank* rule at summary judgment. The idea of *Bank* is that a dismissal with prejudice—in response to a Rule 12(b)(6) motion—is too harsh a penalty for a remediable defect on the face of a complaint. But the same rationale does not apply at summary judgment because, at that stage, "we look *beyond* the complaint." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 976 (11th Cir. 2005) (emphasis added); *see also* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2713 (4th ed. June 2024 update); *Am. C.L. Union of Fla., Inc. v. Dixie County*, 690 F.3d 1244, 1248 n.1 (11th Cir. 2012). Because the question of summary judgment does not turn on the facial sufficiency of a complaint's allegations, there is no reason to provide a chance to amend as a matter of course before summary judgment is resolved.

To be sure, we do not doubt that district courts have discretion to allow amendments to pleadings as a case progresses. A district court may allow an amendment even "after the time for amendment" has passed in its own scheduling order. *See Hargett v. Valley Fed. Sav. Bank*, 60 F.3d 754, 761 (11th Cir. 1995). But the *Bank* rule does not *require* that a district court allow amendment at each and every stage of litigation—only in certain circumstances before a Rule 12(b)(6) dismissal with prejudice or the functional equivalent. Because Horton's case was not resolved at the Rule 12(b)(6)

stage, but at summary judgment, the *Bank* rule does not apply on its own terms.

We will now turn to Horton's second argument—that the special report procedure should afford him a *sua sponte* right to amend prior to dismissal. This Court has recommended the use of special reports in *pro se* prisoner litigation for fifty years. *See Hardwick v. Ault*, 517 F.2d 295, 298 (5th Cir. 1975); *see also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209-11 (11th Cir. 1981) (adopting as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981). We have suggested that special reports can "serve the useful functions of notifying the responsible state officials of the precise nature of the prisoner's grievance and encouraging informal settlement of it, or, at the least, of encouraging them to give the matter their immediate attention so that the case may [be] expeditiously . . . shaped for adjudication." *Hardwick*, 517 F.2d at 298. They provide detailed information to the courts that *pro se* imprisoned plaintiffs would otherwise have to develop on their own. And they help to resolve cases involving important constitutional challenges to correctional practices.

We believe Horton's argument misunderstands the purpose, nature, and benefits of an order requiring a special report. With the input of federal judges, a committee of the judiciary developed a model special report order and recommended its use in 1980. *See* Federal Judicial Center, *Recommended Procedures for Handling Prisoner Civil Rights Cases in the Federal Courts* (1980). The committee explained that the special report procedure is a useful

"supplement to the traditional methods of discovery" because "[t]raditional discovery techniques do not work very well" for *pro se* prisoners who cannot, due to their confinement, conduct depositions or the like. *Id.* at 16–18, 81. To that end, the main point of the special report order is to require the defendants to produce evidence to the plaintiff and the court, thereby progressing litigation beyond arguments about the sufficiency of the prisoner's allegations and directly to a consideration of evidence at summary judgment or trial.

Because there is no reason to apply the *Bank* rule at the summary judgment stage, it also makes no sense to require a *Bank* equivalent as part of the special report procedure. No doubt because of our urging, district courts in this Circuit have required special reports in *pro se* prisoner litigation for decades. *See, e.g.*, *Kelly v. Ambroski*, 97 F. Supp. 3d 1320, 1327 (N.D. Ala. 2015); *Harris v. Dugger*, 757 F. Supp. 1359, 1364 (S.D. Fla. 1991); *Jackson v. Wharton*, 687 F. Supp. 595, 596 (M.D. Ga. 1988) (collecting cases). But we are not aware that any have ever provided for *sua sponte* amendment after converting a special report into a summary judgment motion and ruling on that motion. Instead, because the very function of the special report procedure is to advance claims to the evidentiary stage, the special report procedure does not mandate any particular rule about pleadings or testing the facial sufficiency of a complaint.

Horton's final argument—that the district court's failure to *sua sponte* allow an amendment is unfair on the facts of his case—is similarly unavailing. At the summary judgment stage, fairness to

*pro se* litigants requires that they be informed that the court is considering summary judgment and that they be allowed time to marshal evidence in support of their allegations. As a general matter, a court must "giv[e] notice and a reasonable time to respond" before it "consider[s] summary judgment on its own." Fed. R. Civ. P. 56(f). And we have recognized that "a court should be particularly careful to ensure proper notice to a *pro se* litigant." *Smith v. Sch. Bd. of Orange Cnty.*, 487 F.3d 1361, 1368 (11th Cir. 2007) (internal marks omitted).

Here, Horton received both notice and an opportunity to respond. The magistrate judge explained to Horton that the special report would be converted to a motion for summary judgment. He instructed Horton that "a plaintiff against whom a motion for summary judgment is filed must oppose that motion" with evidence, that an affidavit must be "sworn to and subscribed before a notary public," and that a declaration must be "signed under penalty of perjury." He notified Horton that the granting of the motion would represent a final adjudication and potentially foreclose subsequent litigation. And he gave Horton two months to respond.

Under our caselaw, this process was more than sufficient. For example, in *Coleman v. Smith*, we deemed sufficient a district court's instruction to a *pro se* plaintiff "that the defendants' report might be treated as a motion for summary judgment," "that counter-affidavits were necessary to rebut the matters presented by the defendants," and "that defendants' motion for summary judgment will be presented to the district court for final ruling." 828 F.2d 714,

716–17 (11th Cir. 1987) (internal marks omitted). We reasoned that "the clear implication of telling the plaintiff that he must 'rebut' statements of the defendant and that the district court would give a 'final ruling' as to summary judgment is that the defendants' report might be accepted as the truth and that the ruling would be 'final[]' unless plaintiff responded." *Id.* at 716.

In short, the problem here is not that Horton needed *sua sponte* leave to amend—the problem is that Horton needed to file evidence in response to a motion for summary judgment, which the magistrate judge specifically instructed him to do. Horton could have requested leave to amend his complaint—indeed, he was not under any time pressure to proceed without amendment, he knew how to amend, and he had already amended once. Instead, Horton ignored the magistrate judge's instructions and responded to the defendants' evidentiary materials with an unsigned declaration that included new allegations. We cannot say that Horton's failure to follow instructions makes the result unfair.

## IV.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

23-13379              WILSON, J., Dissenting                    1

WILSON, Circuit Judge, Dissenting:

As the majority explains, our decision in *Bank v. Pitt* requires the district court to give a plaintiff "at *least* one chance to amend the complaint" before dismissing the case (known as the *Bank* Rule). 928 F.2d 1108, 1112 (11th Cir. 1991) (per curiam) (emphasis added). But this court limited the *Bank* Rule only to pro se plaintiffs, by holding that "[a] district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc). Today, the majority explicitly cabins *Bank* and *Wagner* to Rule 12(b)(6) dismissals with prejudice and chooses not to extend the *Bank* Rule to the summary judgment context. This seems like a logical restriction. But there is a wrinkle that makes the restriction of the *Bank* Rule problematic—the use of special reports by district courts.

Here, Michael Horton filed his complaint alleging violations of his constitutional rights, specifically related to body-cavity searches of him during an institution-wide search. The district court ordered the officers named in Horton's complaint to respond with an "Answer and Special Report." This special report required the officers to conduct discovery and provide sworn statements and medical records.

The only case that approves the use of special reports is one from the former Fifth Circuit. *See Hardwick v. Ault*, 517 F.2d 295,

2                    WILSON, J., Dissenting                    23-13379

298 (5th Cir. 1975). But the Fifth Circuit specifically explained that the use of these reports should be careful not to "divest the [Section] 1983 plaintiff of any of the rights he enjoys under the Federal Rules of Civil Procedure." *Id.* Although we have adopted decisions from the old Fifth Circuit from before October 1, 1981, *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court hasn't explicitly endorsed the practice in the over forty years that we have existed as a court.

Even still, the use of special reports is common practice in Alabama.[1] Typically, once the district court receives this special report, the court converts that report to a motion for summary judgment. Then, the court typically gives the often pro se prisoner plaintiff, like Horton, a chance to submit only his own affidavits to counter those of the officers. The district court's order here does not allow the plaintiff to conduct any discovery or to depose the officers.

While I understand the need for district courts to manage their dockets and address cases promptly, the use of special reports removes a consequential part of litigation—discovery—from those

---

[1] *See, e.g.*, *Kister v. Jackson*, No. 2:20-CV-757, 2023 WL 4675949, at *1 (M.D. Ala. Apr. 25, 2023), *report and recommendation adopted*, No. 2:20-CV-757, 2023 WL 4673440 (M.D. Ala. July 20, 2023); *Inniss v. Finklea*, No. CV 19-0295, 2022 WL 561656, at *1 (S.D. Ala. Jan. 18, 2022), *report and recommendation adopted*, No. CV 19-00295, 2022 WL 551259 (S.D. Ala. Feb. 23, 2022); *Favors v. Gates*, No. 7-14-CV-01733, 2016 WL 8578160, at *1 (N.D. Ala. Nov. 17, 2016), *report and recommendation adopted*, No. 7-14-CV-01733, 2017 WL 1047637 (N.D. Ala. Mar. 20, 2017).

23-13379                    Wilson, J., Dissenting                    3

who are trying to navigate a system without help from a lawyer—pro se prisoners. I am wary of a court-imposed system that removes a large part of litigation for litigants who are already at a disadvantage. With that, I would find that the district court erred in sua sponte converting the special report to a motion for summary judgment.

The best practice[2] would have been for the district court to allow Horton the opportunity to file an amended complaint. Because the district court did not do that, I would have remanded the case to allow Horton an opportunity to amend. Thus, I respectfully dissent.

---

[2] Nothing prevented the district court from allowing Horton to amend his complaint even after previously construing the special report as a motion for summary judgment. *See Loyde v. Brown*, No. CV 18-0244, 2019 WL 1757530, at *1 (S.D. Ala. Apr. 19, 2019) (withdrawing order converting the defendant's answer and special report to a motion for summary judgment and directing the pro se prisoner-plaintiff to amend his complaint).